**WHITE HAT MANAGEMENT, L.L.C., Appellant,**

**v.**

**OHIO FARMERS INSURANCE CO. et al., Appellees.**

[Cite as *White Hat Mgt. L.L.C. v. Ohio Farmers Ins. Co.,* 167 Ohio App.3d 663, 2006-Ohio-3280.]

Court of Appeals of Ohio,
Ninth District, Medina County.

No. 05CA0038–M.

Decided June 28, 2006.

664

John B. Schomer, Darrin R. Toney, and Leigh A. Kobzowicz, for appellant.

Andrew J. Natale, James T. Dixon, Jennifer L. Cuthbertson, and Frantz Ward, for appellees.

CARR, Judge.

{¶ 1} Appellant, White Hat Management, L.L.C. ("White Hat"), appeals from the judgment of the Medina County Court of Common Pleas, which found against appellant on both of its breach-of-contract claims. This court reverses that judgment.

## I

{¶ 2} The facts herein are largely undisputed. White Hat, as a part of its business, manages community schools. In September 2003, White Hat solicited bids for a window-replacement project at HOPE Academy in Canton. In response to its solicitation, White Hat received three bids. Based upon the bids, White Hat determined that appellee, Metro Window & Glass Company ("Metro"), had submitted the lowest and best bid. Accordingly, White Hat contacted Metro to inform its representative that Metro's bid had been accepted.

{¶ 3} Once Metro was aware that its bid had been accepted, its representative, Richard Kalich, requested bid tabulations. Upon receiving the tabulations, Kalich realized that Metro's bid, $87,227, was drastically lower than the next lowest bid, $167,491. Shortly thereafter, White Hat forwarded a formal contract to Metro for execution in compliance with the terms of the bid. Kalich refused to execute the agreement, returned the contract, and informed White Hat that he had committed an error in formulating his bid. White Hat, therefore, sought to invoke the terms of the bid bond that had been submitted in conjunction with Metro's bid. In an attempt to recover under the bond, White Hat contacted appellee, Ohio Farmers Insurance Company ("Farmers"). Farmers informed White Hat that they believed that Metro was not liable under a contract due to the error in its bid and that accordingly it was not liable as a surety under the bid bond.

{¶ 4} As a result of the above, White Hat filed suit alleging two distinct breach-of-contract claims. First, White Hat asserted that once it had accepted Metro's bid, a binding contract was formed and Metro had breached that contract. Second, White Hat claimed that both appellees had breached the bid-bond contract. The matter then proceeded to a jury trial. At the close of White Hat's case, appellees moved for directed verdicts on both counts in the complaint. The trial court granted appellees' motion for directed verdict on White Hat's breach of contract as it related to the bid itself. The remaining claim for breach of contract of the bid bond was submitted to the jury. The jury returned a verdict in favor of appellees. White Hat timely appealed the trial court's judgment, raising two assignments of error for review.

## II

### FIRST ASSIGNMENT OF ERROR

The trial court erred in granting [Metro's] motion for directed verdict on [White Hat's] claim for breach of contract (bid).

{¶ 5} In its first assignment of error, White Hat contends that the trial court erred in granting a directed verdict on its claim of breach of contract regarding

the bid itself. Specifically, White Hat argues that reasonable minds could have concluded that White Hat's communication to Metro that its bid had been accepted formed a binding contract. This court agrees.

{¶ 6} Pursuant to Civ.R. 50(A)(4), a trial court is authorized to grant a directed verdict only when:

[A]fter construing the evidence most strongly in favor of the party against whom the motion is directed, [the court] finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

When ruling on a motion for a directed verdict, the court considers the sufficiency of the evidence. *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 119, 671 N.E.2d 252, reversed on other grounds (1999), 85 Ohio St.3d 457, 709 N.E.2d 162.

When a motion for a directed verdict is entered, what is being tested is a question of law; that is, the legal sufficiency of the evidence to take the case to the jury. This does not involve weighing the evidence or trying the credibility of witnesses; it is in the nature of a demurrer to the evidence and assumes the truth of the evidence supporting the facts essential to the claim of the party against whom the motion is directed, and gives to that party the benefit of all reasonable inferences from that evidence.

*Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 68, 23 O.O.3d 115, 430 N.E.2d 935; see, also, *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284–285, 21 O.O.3d 177, 423 N.E.2d 467.

{¶ 7} If the party opposing the motion for a directed verdict fails to present evidence on one or more of the essential elements of a claim, a directed verdict is proper. *Hargrove v. Tanner* (1990), 66 Ohio App.3d 693, 695, 586 N.E.2d 141. However, when such substantial evidence is presented that reasonable minds could come to differing conclusions, the court should deny the motion. *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 344 N.E.2d 334. Under the "reasonable minds" portion of Civ.R. 50(A)(4), the court is only required to consider whether there exists any evidence of probative value in support of the elements of the nonmoving party's claim. See *Coleman v. Excello–Textron Corp.* (1989), 60 Ohio App.3d 32, 40, 572 N.E.2d 856; *Ruta*, 69 Ohio St.2d at 69, 23 O.O.3d 115, 430 N.E.2d 935.

{¶ 8} In *Commr. of Highland Cty. v. Rhoades* (1875), 26 Ohio St. 411, the Ohio Supreme Court held that generally a contract is formed when a party soliciting bids accepts a proposed bid and gives the bidder notice of the acceptance. Id. at paragraph one of the syllabus. The sole purpose of a later

agreement to execute a formal written contract is to evidence the contract terms to which the parties previously agreed. Id. at 418. The bidder, therefore, may rightfully reject a formal written contract that materially modified the terms of the original contract. Id. at 419. However, an exception to the general rule presented in *Rhoades* exists when it is understood that the acceptance of the bid and execution of a formal written contract are both conditions of the formation of a contract between the parties. *Hughes v. Clyde* (1884), 41 Ohio St. 339, 340. This two-part acceptance process may be imposed by the information contained in the solicitation of bids or by virtue of the fact that the party seeking the bid is authorized by statute to contract only by a formal written contract. Id.

{¶ 9} Herein, the parties do not dispute the factual evidence surrounding White Hat's breach-of-contract claim. Rather, they dispute the applicable law. White Hat urges that the general rule espoused in *Rhoades* is applicable. Metro contends that the evidence supports application of the two-part acceptance process detailed in *Hughes*. Upon review of the record, this court finds that reasonable minds could reach different conclusions on which process is applicable.

{¶ 10} In support of its argument, Metro relies upon R.C. 153.12 and *MacKinnon–Parker, Inc. v. Lucas Metro. Hous. Auth.* (1992), 84 Ohio App.3d 453, 616 N.E.2d 1204. In *MacKinnon*, the Sixth District found that "[u]nder either R.C. 153.12 or 3735.36, it is clear that appellee cannot bind itself until a formal written contract is executed." Id. at 458, 616 N.E.2d 1204. Under the facts presented herein, we cannot subscribe to the holding in *MacKinnon* that R.C. 153.12 mandates a finding that no contract exists.

{¶ 11} R.C. 153.12(A) provides as follows:

With respect to award of any contract for * * * public improvement made by the state, or any county, township, municipal corporation, school district, or other political subdivision, or any public board, commission, authority, instrumentality, or special purpose district of or in the state or a political subdivision * * *, the award, and execution of the contract, shall be made within sixty days after the date on which the bids are opened. The failure to award and execute the contract within sixty days invalidates the entire bid proceedings and all bids submitted, unless the time for awarding and executing the contract is extended by mutual consent of the owner or its representatives and the bidder whose bid the owner accepts and with respect to whom the owner subsequently awards and executes a contract.

A reading of the language of R.C. 153.12 demonstrates that White Hat was required to execute a contract in order to comply with the statute. We agree with our sister court that "executing a contract" imposes a written requirement. However, no language exists in R.C. 153.12(A) that would prohibit White Hat

from entering into an oral contract and subsequently memorializing that agreement in a written contract. Accordingly, Metro's statutory argument that R.C. 153.12 precludes oral contracts lacks merit.

{¶ 12} The facts herein also serve to distinguish the instant case from *Hughes.* In *Hughes,* the bid solicitation did not contain the specific terms of the agreement that would be entered by the parties and was silent on several key aspects of the work to be performed. *Hughes,* 41 Ohio St. at 339. Accordingly, the court concluded that a formal written agreement was necessary. The facts herein, however, support White Hat's conclusions that execution of the written contract was a mere formality and that application of the general rule in *Rhoades,* 26 Ohio St. 411, is appropriate.

{¶ 13} The bidding documents sent to prospective bidders contained the following provision:

> The Bidder pledges to enter into a Contract with the Owner on the terms stated in the bid[.]

Additionally, bidders were informed that "the Agreement for the Work will be written on AIA Document A101, Standard Form of Agreement Between Owner and Contractor Where the Basis of Payment Is a Stipulated Sum." The remaining bidding documents detailed the specific terms of the agreement that the bidder was required to accept in order to contract with White Hat.

{¶ 14} It is undisputed that Metro received and understood the documents provided by White Hat. Accordingly, at the time it submitted its bid, Metro "pledge[d] to enter into a contract with [White Hat] on the terms stated in the bid." Metro has never contended, nor does the record support, that White Hat sought to alter the terms of the oral agreement when it was memorialized. Rather, White Hat supplied Metro with the exact contract, AIA Document A101, that was contained in the bidding documents and utilized Metro's bid to fill in the remaining information. Metro, however, seeks to avoid liability on the basis that it never executed a written agreement. Such a result violates the public policy embodied in competitive bidding. Metro did not seek to avoid contractual liability until it received notice of the two bids submitted by its competitors. Upon noticing the discrepancy between its bid and its competitors' bids, Metro then refused to execute the written agreement that embodied the very terms of its bid. Permitting Metro to avoid liability on its bid would serve only to encourage others to perform in a similar manner.

{¶ 15} Metro has also urged that permitting White Hat to sue under its breach of contract pursuant to the bid acceptance would strip away entirely the purpose of the bid bond. This court disagrees.

{¶ 16} The bid bond serves as insurance that the bidder will enter into a written contract. Further, the party soliciting bids is assured that it can accept a bid without the need to research the finances of the bidder. That is, White Hat need not research whether a bidder is financially capable of performing the bid. Rather, in the event that the bid is accepted and the bidder realizes that it cannot perform, White Hat is protected by the bid bond. The bid bond also serves to protect against unforeseen events, such as a bidder refusing to execute a written contract because it has since become insolvent. Accordingly, we cannot agree with Metro that the bid bond is the sole mechanism through which White Hat may seek a remedy.

{¶ 17} Based upon the evidence presented, reasonable minds could have concluded that Metro and White Hat entered into a contract when White Hat notified Metro of the acceptance of its bid. This court has found no law which would prevent White Hat from enforcing such an agreement. The trial court, therefore, erred in granting Metro's motion for directed verdict. White Hat's first assignment of error is sustained.

## SECOND ASSIGNMENT OF ERROR

[The] jury's denial of [White Hat's] claim for breach of contract (bond) was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶ 18} In its second assignment of error, White Hat contends that the jury erred in finding that appellees had not breached the bid bond. Specifically, White Hat contends that it was relieved of its duty to fulfill certain conditions precedent because appellees repudiated the bid bond. This court agrees.

{¶ 19} We review the question of whether a judgment is against the manifest weight of the evidence in a civil context utilizing the same standard of review as that used in the criminal context. *Frederick v. Born* (Aug. 21, 1996), 9th Dist. No. 95CA006286, 1996 WL 471219. Therefore, this court must review the entire record; weigh the evidence and all reasonable inferences; consider the credibility of witnesses; and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009. An appellate court that overturns a jury verdict as against the manifest weight of the evidence acts in effect as a "thirteenth juror," setting aside the resolution of testimony and evidence as found by the trier of fact. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. Notably, such a reversal is reserved for the exceptional case in which the evidence presented weighs heavily in favor of

the party against whom the jury verdict was levied. *Otten,* 33 Ohio App.3d at 340, 515 N.E.2d 1009.

{¶ 20} Further, this court has stated that it "will not reverse the judgment of the trial court as being against the manifest weight of the evidence if the judgment is based upon some competent, credible evidence that speaks to all of the material elements of the case." *Morris v. Andros,* 158 Ohio App.3d 396, 2004-Ohio-4446, 815 N.E.2d 1147, at ¶ 18. This standard is highly deferential and even "some" evidence is sufficient to sustain the judgment and prevent reversal. *Bell v. Joecken* (Apr. 10, 2002), 9th Dist. No. 20705, 2002 WL 533399.

{¶ 21} We begin by recognizing the awkward posture of White Hat's argument. In essence, White Hat seeks to prove a negative, i.e., that there was no evidence that appellees did not repudiate the bid bond. Effectively, White Hat has argued that the sole evidence presented to the trial court demonstrates that appellees repudiated the bid bond. This court agrees.

{¶ 22} Repudiation is defined as:

(a) a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach * * *, or

(b) a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach.

*Burke v. Athens* (1997), 123 Ohio App.3d 98, 103, 703 N.E.2d 804, quoting 2 Restatement of the Law 2d, Contracts (1981), Section 250. Further, a repudiation relieves the other party of its duty to fulfill conditions precedent. *Integra Natl. Bank v. Oakes Constr. Co.* (Mar. 9, 1994), 9th Dist. Nos. 16248, 16281, 16300, 1994 WL 68045. The bid bond itself contains the following condition precedent:

PROVIDED, HOWEVER, neither Principal nor Surety shall be bound hereunder unless Obligee prior to the execution of the final contract shall furnish evidence satisfactory to the Principal and Surety that financing has been firmly committed to cover the entire cost of the project.

Under a theory of repudiation, White Hat has argued that since Farmers refused to pay pursuant to the bond, it was relieved of its duty to provide proof of financing. This court finds that such an argument has merit.

{¶ 23} Upon receiving notice that Metro would not execute a written contract, White Hat corresponded with Farmers, writing:

Metro Window and Glass Company returned the unexecuted contract on October 15, 2003. Therefore, we are forced to invoke this bond.

Farmers responded with a letter containing the following:

Given the appearance of a reasonable dispute between Metro and White Hat Management, LLC, OFIC is unwilling to foreclose the position of Metro by making payment to White Hat as requested. Also, as the obligations of the surety can be no greater that that [of] its principal, OFIC would not be liable under the bid [bond] if Metro is not liable. OFIC must respectfully decline to make payment to White Hat Management, LLC as requested.

Accordingly, Farmers unequivocally informed White Hat that it would not fulfill the terms of the bid-bond contract. This court finds that such a statement of the intent to breach falls squarely within the definition of a repudiation, because it is a statement that the obligor will commit a breach of its obligations. See *Burke*, supra.

 {¶ 24} Following a repudiation, a party is relieved from fulfilling a condition precedent, because fulfilling such a condition would be futile and the law requires no one to perform a futile act. *Livi Steel, Inc. v. Bank One* (1989), 65 Ohio App.3d 581, 586, 584 N.E.2d 1267. The facts herein confirm that that rationale is both logical and equitable. During trial, Farmers admitted that even if White Hat had produced proof of financing, it still would not have performed under the bid bond and would have asserted other defenses to the contract. Accordingly, Farmers' letter to White Hat repudiated the bid bond and White Hat was not required to fulfill the condition precedent contained therein.

{¶ 25} The remaining undisputed facts demonstrate that Farmers and Metro refused to pay under the bond. Accordingly, the jury's finding that Farmers and Metro did not breach the bid bond is not supported by even "some" competent, credible evidence. White Hat's second assignment of error, therefore, is sustained.

### III

{¶ 26} White Hat's assignments of error are sustained. The judgment of the Medina County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

WHITMORE, P.J., and BOYLE, J., concur.