KNOTT, Appellee and Cross–Appellant,

v.

REVOLUTION SOFTWARE, INC., Appellant and Cross–Appellee.

[Cite as *Knott v. Revolution Software, Inc.*, 181 Ohio App.3d 519, 2009-Ohio-1191.]

Court of Appeals of Ohio,
Fifth District, Delaware County.

No. 07 CAE 10 0055.

Decided March 16, 2009.

522

Richard T. Robol, for appellee and cross-appellant.

David C. Levine and Barry H. Wolinetz, for appellant and cross-appellee.

———

DELANEY, Judge.

{¶ 1} This is an appeal from separate judgments of the Delaware County Court of Common Pleas following a bifurcated trial on a breach-of-contract claim instituted by plaintiff-appellee and cross-appellant, Patrick J. Knott, against defendant-appellant and cross-appellee, Revolution Software, Inc. ("RevSoft").

{¶ 2} The relevant factual and procedural history follows.

{¶ 3} This case concerns a stock-purchase agreement entered into between the parties on October 12, 2001. RevSoft is in the business of providing computer

software development and consulting. RevSoft is owned by Richard Snide and Polly Clavijo. At the time the parties entered into the agreement, Knott was an employee of RevSoft in its PC division. The agreement was also signed by another PC division employee, Michael Ravagnani, a nonparty. The agreement was drafted by Ms. Clavijo's husband, Carlos Clavijo, a certified public accountant who performed consulting services for RevSoft.

{¶ 4} On July 3, 2003, Knott was terminated for reasons unrelated to his work. Following termination, RevSoft refused to honor the agreement in any respect.

{¶ 5} On November 4, 2003, Knott filed a complaint against RevSoft that stated a cause of action for breach of the contract and sought damages. The breach was based upon Knott's right to purchase shares of authorized and not-yet-issued stock, equal to the outstanding shares of RevSoft, at a time and price determined by the terms of the agreement.

{¶ 6} A trial on the issue of liability only was conducted before a magistrate on July 19, 2005. By decision dated July 29, 2005, the magistrate recommended that judgment be entered in favor of Knott on his claim for breach of contract, as RevSoft had failed to comply with the terms of the agreement. RevSoft filed objections to the magistrate's decision. On May 10, 2006, the trial court overruled the objections and affirmed the magistrate's decision.

{¶ 7} The trial court referred the matter to the magistrate to conduct a trial on the issue of damages. On June 1, 2007, the magistrate issued a decision finding that Knott was entitled to purchase 25 percent of the total stock of RevSoft and, as a result of RevSoft's breach, awarded Knott damages in the amount of $424,000. Both parties filed objections to the magistrate's decision. On September 27, 2007, the trial court overruled the objections with the exception related to the magistrate's error in failing to find that RevSoft is a Subchapter S corporation. Thereupon, the trial court entered judgment in favor of Knott in the amount of $424,000. This appeal ensued.

{¶ 8} Appellant raises three assignments of error:

{¶ 9} "I. The trial court erred by finding that defendant was liable to plaintiff for damages for breach of contract. Magistrate's decision, July 29, 2005, R. 165 ('Mag. L. Dec.'); judgment entry overruling the defendant's objections to the magistrate's decision and judgment entry adopting the magistrate's decision, May 10, 2006, R 191 ('J.E.L.')."

{¶ 10} "II. The trial court erred by denying defendant's motions for 'directed verdict.' Transcript of liability hearing, 148, R. 177; Transcript of damages hearing, 245, R. 223."

{¶ 11} "III. The trial court erred by finding that plaintiff incurred damages of $424,000. Magistrate's decision, June 1, 2007, R. 227 ('Mag. D. Dec.'); judgment

entry sustaining in part and overruling in part plaintiff's objections to the magistrate's decision and overruling the defendant's objections to the magistrate's decision and judgment entry adopting in part the magistrate's decision, September 27, 2007, R. 234 ('J.E.D.')."

{¶ 12} Appellee cross-appeals and raises three assignments of error:

{¶ 13} "I. The decision below erred in failing to award Mr. Knott prejudgment interest on this contract damages. Mag. Dec. 6–1–07, R. 227, judg entry 9–27–07, R. 234.

{¶ 14} "II. The decision below erred in determining Mr. Knott's damages based on a 25% ownership interest in Revsoft, rather than a 50% interest. Magistrate decision, June 1, 2007 ('Mag Dec 6–1–07'), R. 227; judgment entry sustaining in part and overruling in part plaintiff's objections to the magistrate's decision and overruling the defendant's objections to the magistrate's decision and judgment entry adopting in part the magistrate's decision, September 27, 2007 ('Judg entry 9–27–07'), R. 234.

{¶ 15} "III. The decision below erred by determining Mr. Knott's damages based on tax treatment as a Chapter C corporation, rather than a Subchapter S corporation."

I

{¶ 16} We begin with RevSoft's first assignment of error, in which RevSoft argues that the trial court erred in concluding that RevSoft breached the agreement. RevSoft contends that Knott failed to meet conditions precedent set forth in the agreement. Specifically, RevSoft asserts that Knott did not have a right to buy stock until conditions concerning employee and revenue targets for the PC division were met in each of five separate years (not necessarily consecutive) and then only if Knott tendered and fully paid a promissory note for the purchase price in an amount determined under a formula provided in the agreement.

{¶ 17} It was undisputed by the parties that Knott met the established targets for three years: 1999, 2000, and 2002. RevSoft contends that the earliest Knott could have earned the right to purchase stock would have been the beginning of 2005 if the targets were met in both 2003 and 2004. However, Knott was terminated in mid–2003, so the targets in 2003 and 2004 were not met.

{¶ 18} At trial and on appeal, the parties do not dispute that there was a contract between the parties; that Knott was terminated by RevSoft; that RevSoft informed Knott that he had no right to tender any cash or promissory note to RevSoft in exchange for the stock because he was no longer an employee; and that RevSoft abolished the PC division shortly after Knott's termination.

{¶ 19} The trial court affirmed the magistrate's finding that Knott's employment was not a necessary condition, as the agreement did not specifically state that it was contingent upon Knott's employment and further, that the agreement required RevSoft to renegotiate the targets if an employee, including Knott, left RevSoft. There is also no dispute that RevSoft did not renegotiate the targets upon Knott's departure.

{¶ 20} On appeal, RevSoft argues that the trial court erred in finding that RevSoft anticipatorily repudiated the contract and rendered performance by Knott impossible. The trial court characterized RevSoft's position that it did not incur any contractual obligation because the conditions precedent were not met as "feckless."

{¶ 21} We note that stock options are contractual rights that an employer grants as a benefit to an employee to provide compensation for services or to provide incentives. Generally, a stock option may be defined as a right to buy a designated stock at any time within a specified period at a determinable price if the holder of the option chooses. Since stock options are contracts, we apply contract law.

{¶ 22} In *Suter v. Farmers Fertilizer Co.* (1919), 100 Ohio St. 403, 126 N.E. 304, the Ohio Supreme Court held that a party cannot avoid liability under a contract if that person has done some act that prevents the carrying out of the contract according to its terms. See also *Long v. Commodore Bank* (Jan. 15, 2002), 5th Dist. No. 01–CA–14, 2002 WL 109289.

{¶ 23} "A repudiation or other total breach by one party enables the other to get a judgment for damages or for restitution without performing acts that would otherwise have been conditions precedent." *Stonehenge Land v. Beazer Homes Invests.*, 177 Ohio App.3d 7, 2008-Ohio-148, 893 N.E.2d 855, ¶ 26, citing 5 Corbin on Contracts (1951) 920, 922, Section 977. "On this principle, Ohio courts have concluded that the 'renunciation of a contract by one of the parties constitutes a breach of contract which gives rise to a cause of action for damages, and in such a case notice, demand and tender are waived.'" (Citation omitted.) Id. See also *White Hat Mgt., L.L.C. v. Ohio Farmers Ins. Co.*, 167 Ohio App.3d 663, 2006-Ohio-3280, 856 N.E.2d 991, ¶ 22 (a repudiation relieves the other party of its duty to fulfill conditions precedent).

{¶ 24} Furthermore, "when the facts presented in a case are undisputed, whether they constitute performance or a breach of the contract, is a question of law for the court." *Luntz v. Stern* (1939) 135 Ohio St. 225, 237, 14 O.O. 62, 20 N.E.2d 241.

{¶ 25} The trial court succinctly summarized the evidence of RevSoft's repudiation of the agreement as follows:

{¶ 26} "Any voluntarily affirmative act, which renders substantial performance of the contractual duties apparently impossible amounts to an anticipatory repudiation. In this case, several acts could amount to such a voluntary act: the disbandment of the PC division, the failure to calculate the targets after Knott was fired, the failure to renegotiate the targets in good faith after Knott was fired, and Mr. Clavijo's e-mailed letter stating that Knott had no right to tender a promissory note in exchange for stock. Moreover, the testimony of Ms. Clavijo that the contract was no longer valid after the Plaintiff was fired is further evidence of the Defendant's repudiation." (Citation omitted.)

{¶ 27} RevSoft contends that by finding it repudiated the agreement, the trial court wrote a new contract, one without conditions. However, RevSoft concedes that the act of informing Knott that he had no right to tender a promissory note in exchange for stock may be an act of repudiation and that its failure to recalculate the targets after Knott was terminated could have been a breach.

{¶ 28} RevSoft further argues no repudiation or act on its part contributed materially to the nonoccurrence of any condition precedent and that Knott did not prove his ability to perform his obligation of tendering and paying in full a promissory note.

{¶ 29} Here, the evidence was unequivocal that RevSoft completely repudiated the agreement upon terminating Knott. Under Ohio law, this gives rise to a cause of action for damages. It further excused Knott from tendering and paying in full a promissory note. The evidence further reflects that RevSoft failed to make a good faith effort to perform under the terms of the contract.

{¶ 30} Lastly, RevSoft contends that Knott failed to produce proof that he was ready, willing, and able to pay the purchase price. Interestingly, RevSoft objected to a question posed to Knott by his counsel on this very issue at trial. RevSoft argued that such testimony was irrelevant. Id. In addition, RevSoft did not raise this issue in its motion for dismissal at the end of the liability phase or its objections to the magistrate's decision. Therefore, this court need not address this argument because RevSoft did not raise it at the trial court level. Nevertheless, we find that sufficient evidence was presented by Knott to demonstrate that he was ready to perform but that RevSoft made it clear it was not honoring the agreement.

{¶ 31} Accordingly, RevSoft's first assignment of error is overruled.

## II and III

{¶ 32} Because they are interrelated, we will address RevSoft's second and third assignments of error together.

{¶ 33} In support of its second assignment of error, RevSoft contends that the trial court erred in denying its motions for directed verdict made at the end of the liability and damages phase. In its third assignment of error, it maintains that the trial court erred in permitting the plaintiff's expert testimony of Gary Moll to establish Knott's damages. Without this expert testimony, RevSoft argues, Knott has failed to establish damages, and it was entitled to a directed verdict.

{¶ 34} As a motion for directed verdict lies only in a jury trial, we will treat this assignment of error as one arguing that the court erred in failing to grant a dismissal under Civ.R. 41(B)(2), which permits dismissal on the ground that "upon the facts and the law the plaintiff has shown no right to relief."

{¶ 35} With respect to the liability phase of the trial, RevSoft restates the arguments raised above, namely that Knott failed to present evidence that the targets were met or could have been met any year after he was terminated and that he had the ability to tender and pay in full a promissory note for the purchase price of the stock.

{¶ 36} We find that at the end of Knott's case-in-chief, sufficient evidence was introduced in support of the elements for breach of contract. These include the existence of a written contract between the parties, repudiation by RevSoft, and damage to Knott. Also, as stated earlier, repudiation of the agreement relieved Knott of its duty to fulfill conditions precedent. *White Hat Mgt., L.L.C.,* 167 Ohio App.3d 663, 2006-Ohio-3280, 856 N.E.2d 991, ¶ 22. Therefore, the magistrate did not err in denying RevSoft's motion for a dismissal.

{¶ 37} In regards to the damages phase, RevSoft contends in its third assignment of error that the testimony of Gary Moll was speculative, unreliable, and based upon inadequate foundation. Without this expert testimony, RevSoft argues, it was entitled to a directed verdict.

{¶ 38} At trial, RevSoft moved to strike Moll's testimony as well as his reports because Moll's "entire report was premised on the assumption that the targets were met through December 31, 2004." RevSoft contends that this is an inaccurate assumption that violates Evid.R. 702(C) because an expert's report must be based upon reliable information. Secondly, RevSoft claims that Moll's inaccurate projections as to RevSoft's revenue, net income, assets, and capitalization were in error and grossly inaccurate.

{¶ 39} Evid.R. 702 provides that a witness may testify as an expert if all of the following apply:

{¶ 40} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

{¶ 41} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

{¶ 42} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information."

{¶ 43} Evid.R. 703 further provides:

{¶ 44} "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing."

{¶ 45} A trial court's role in determining whether an expert's testimony is admissible under Evid.R. 702(C) focuses on whether the opinion is based upon principles and methods that are reliable, not whether the expert's conclusions are correct or whether the testimony satisfies the proponent's burden of proof at trial. *Miller v. Bike Athletic Co.* (1998), 80 Ohio St.3d 607, 611, 687 N.E.2d 735. The decision remains with the trial court judge and will be overturned on appeal only for abuse of discretion. Id. at 616, 687 N.E.2d 735.

{¶ 46} We also are mindful that this was a bench trial, not a jury trial, and we afford broad leeway to the trial court in deciding the reliability of particular expert testimony.

{¶ 47} As an initial matter, RevSoft does not challenge Moll's qualifications as a damages expert in this case. Moll, a certified public accountant and business valuator, testified as to the fair market value of RevSoft as of December 31, 2004, and the economic loss resulting to Knott from his inability to purchase an ownership interest in the company.

{¶ 48} Moll's analysis determined that $3,600,000 would be a conservative fair market valuation of RevSoft. This was determined by using the discounted cash flow method based on the actual and forecasted cash flow of the company.[1] The fair market value was determined as "the price, in cash or equivalent, that a

---

1. In determining the fair market value, Moll made certain adjustment to RevSoft's earning stream "in order to make the Company comparable to others in the industry and show the earning stream on a true economic basis." Moll stated: "[W]e have calculated a normal level of taxes for the following reasons: The definition of 'fair market value' makes reference to a transaction between a 'willing buyer and a willing seller.' This definition implies that the universe of participants in this transaction are ALL potential buyers and sellers. To assume that a buyer of the Company would have the power to maintain current tax structures of the Company would unnecessarily limit the universe of hypothetical willing buyers. The market information used to derive our capitalization is based on information derived from C-corporations, and thus are after consideration of federal taxes." Moll then "assumed that the effective tax rate for federal and local taxes is 40.0 percent. The Company is an S-Corporation and taxes are paid by the owners of the business through their personal tax returns. The tax rates assumptions are based on corporate tax rates."

buyer could reasonably be expected to pay, and a seller could reasonably be expected to accept, if the property were exposed for sale on the open market for a reasonable period of time, buyer and seller each being in possession of the pertinent facts, and neither being under a compulsion to act."

{¶ 49} He then offered two separate valuations of damages: "most reasonable methodology" value ($599,900); and a "more conservative methodology" value ($424,000). The difference between the two values related to a "lack of control discount" and "lack of marketability discount" which was utilized in the more conservative methodology.

{¶ 50} The record reflects that Moll was subject to vigorous, thorough cross-examination, and RevSoft presented a differing view through its expert, J. Michael Nesser, also a certified public account.

{¶ 51} The trial court found Moll's testimony credible and that RevSoft did not offer any credible evidence to contradict the testimony of Moll and his valuation of Knott's damages.

{¶ 52} We recognize, as did the trial court, that Moll made projections based upon certain assumptions (i.e., Knott's remaining employed with RevSoft and Knott being able to purchase RevSoft stock after December 31, 2004), as opposed to RevSoft's actual financial data after Knott's termination and the disbandment of the PC division. However, we are not convinced that such an approach is inappropriate in a case of this nature, where one party repudiates a contract and the contract does not contain a liquidated-damages provision. Our research reveals support for the trial court's decision.

{¶ 53} In *Acoustic Marketing Research, Inc. v. Technics, L.L.C.* (Colo.2008), 198 P.3d 96, a case involving lost future royalties, the Colorado Supreme Court recently held:

{¶ 54} "In a breach of contract action, the measure of damages is the amount it takes to place the plaintiff in the position it would have occupied had the breach not occurred. * * * However, damages are not recoverable for losses beyond an amount that can be established with reasonable certainty. * * * Recognizing the 'practical difficulties of proving future losses with precision,' we have held that a plaintiff seeking future damages must provide the trier of fact with '(1) proof of the fact that damages will accrue in the future, and (2) sufficient admissible evidence which would enable the trier of fact to compute a fair approximation of the loss.' * * * In sum, as long as the fact of future loss is certain, the amount of damages awarded may be an approximation." Id. at 98.

{¶ 55} Overall, in a case of this nature, we find that Moll's opinion on damages was not rendered unreliable by assumptions based upon a continuation, as opposed to a termination, of the agreement. Moll was able to make projec-

tions based upon several years of actual financial data regarding RevSoft's future revenue and value in 2003 and 2004. In addition, such projections were necessary due to RevSoft's repudiation of the agreement and subsequent acts such as the dissolution of the PC Division.

{¶ 56} Our review of Moll's testimony shows that his methods were sufficiently reliable to meet the admissibility threshold. Any weakness in his data and methodologies were exposed upon cross-examination and went to the weight and credibility of his testimony, which was determined by the trier of fact.

{¶ 57} Accordingly, RevSoft's second and third assignments of error are overruled.

Cross–Appeal I

{¶ 58} We now move on to the first assignment of error raised by Knott. He claims that the trial court incorrectly denied him prejudgment interest on his contract damages.

{¶ 59} A trial court's authority to award prejudgment interest on a breach-of-contract claim is governed by R.C. 1343.03(A), which provides that a creditor is entitled to interest at the statutory rate "when money becomes due and payable upon any * * * instruments of writing * * * and upon all judgments * * * of any judicial tribunal for the payment of money arising out of * * * a contract or other transaction."

{¶ 60} The Ohio Supreme Court has held, "The award of prejudgment interest is compensation to the plaintiff for the period of time between the accrual of the claim and judgment, regardless of whether the judgment is based on a claim which was liquidated or unliquidated and even if the sum due was not capable of ascertainment until determined by the court." *Royal Elec. Constr. Corp. v. Ohio State Univ.* (1995) 73 Ohio St.3d 110, 117, 652 N.E.2d 687.

{¶ 61} " '[O]nce a plaintiff receives judgment on a contract claim, the trial court has no discretion but to award prejudgment interest under R.C. 1343.03(A).' " *Zeck v. Sokol,* 9th Dist. No. 07CA0030–M, 2008-Ohio-727, 2008 WL 495481, at ¶ 44, quoting *Zunshine v. Cott,* 10th Dist. No. 06AP–868, 2007-Ohio-1475, 2007 WL 926969, at ¶ 22. "The only issue for resolution by a trial court with respect to prejudgment interest under R.C. 1343.03(A) is how much interest is due." *Zunshine,* 2007-Ohio-1475, 2007 WL 926969, at ¶ 26. "Thus, the trial court's discretion with respect to an award of prejudgment interest on a contract claim extends only to the factual determinations of when interest commences to run and what interest rate applies." Id. at ¶ 27.

{¶ 62} As a matter of law, appellant was entitled to prejudgment interest. The trial court, therefore, erred when it concluded that Knott was not entitled to recover prejudgment interest.

{¶ 63} Knott's first assignment of error is sustained.

## II

{¶ 64} In the second assignment of error, Knott contends that the trial court erred in determining Knott's damages based on a 25 percent, rather than a 50 percent, ownership interest, because Ravagnani did not pursue his 25 percent interest under the agreement. Knott contends that this court should reverse and direct entry of judgment doubling the damage award. We disagree.

{¶ 65} The agreement provides:

{¶ 66} "The following details the agreement between Pat Knott and Mike Ravagnani (New Owners) and Revolution Softward, Inc. (RevSoft). Rick Snide and Polly [Clavijo] (Original Owners), as owners of RevSoft, agree to the terms of this agreement. The New Owners wish to purchase, and RevSoft agrees to issue new shares of RevSoft stock on January 1, 2004 (or later, as described herein). The document describes the procedures for determining the timing and price.

{¶ 67} " * * *

{¶ 68} "Once the five yearly calculations are made, the New Owners and Original Owners agree that the New Owners may purchase restricted shares from RevSoft. They will purchase enough shares such that they will own 50% of the outstanding shares of RevSoft * * *.

{¶ 69} "All of the above has treated the New Owners as one. However, it is understood that there are two New Owners. All amounts and items referred to above will be separated by New Owner when and where appropriate."

{¶ 70} The trial court found that this last provision indicates that all amounts would be separated by the new owners, Knott and Ravagnani. "While it does not give a percentage breakdown for the separation, it is not an unreasonable inference, based upon the evidence presented and the totality of the circumstances of the case, that the Magistrate found that the Plaintiff was entitled only to 25% ownership interest. Given the terms of the contract and the circumstances, it is reasonable for the Magistrate to award 25% interest, where awarding 50% interest would entitle the Plaintiff to more interest in RevSoft than Mr. Snide and Ms. Clavijo individually hold, which was never the intent of the agreement."

{¶ 71} In the field of contract interpretation, clear and unambiguous contractual language is applied without consideration of extrinsic evidence, and

such plain language is reviewed de novo. *Shifrin v. Forest City Ent., Inc.* (1992), 64 Ohio St.3d 635, 638, 597 N.E.2d 499. If a contract is reasonably susceptible of more than one meaning, then it is ambiguous and extrinsic evidence of reasonableness or intent can be employed. Id. Words and phrases are given their common and ordinary meanings absent specific contractual definitions. *Steubenville v. Jefferson Cty.*, 7th Dist. No. 05JE23, 2005-Ohio-6596, 2005 WL 3370602, ¶ 20, citing *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 212, 519 N.E.2d 1380 (words in a contract are given their ordinary meaning unless manifest absurdity would result or an alternative meaning is clearly demonstrated in the contract).

{¶ 72} Knott contends that the clear language of the agreement makes evident that he should be awarded a 50 percent share of RevSoft, as Ravagnani has not asserted any rights under the agreement and was dismissed from the underlying lawsuit at his insistence. Knott further contends that the agreement created a "conveyance to a partnership" or "created a tenancy in common" between Knott and Ravagnani.[2]

{¶ 73} We are not persuaded by Knott's arguments, although we agree the contract is not ambiguous and that its interpretation is a matter of law.

{¶ 74} Reading the contract as a whole, we find it clear that together Knott and Ravagnani were entitled to purchase a 50 percent stake in RevSoft; however, individually, each was entitled to only 25 percent. The agreement provided that "[a]ll amounts and items referred to above will be separated by New Owner when and where appropriate." The contract language sets forth an understanding that the New Owners have separate rights under the agreement and that the exercise of those rights is to be treated separately. Furthermore, simply because Ravagnani did not exercise his contractual rights does not mean that Knott succeeded to those rights. We find no language in the agreement to support that intention, and in fact, the express language of the agreement negates that position. If the language of a contract is clear and unambiguous, courts must enforce the instrument as written. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096.

{¶ 75} Knott's second assignment of error is overruled.

### III

{¶ 76} In his third assignment of error, Knott argues that Moll's valuation of RevSoft and his calculation of Knott's damages, which treated RevSoft as a Chapter C corporation, should have been recalculated by the trial court to reflect

---

2. We note this argument was not raised in the trial court, nor considered or decided by the trial court.

RevSoft's status as a Subchapter S corporation. The trial court declined to do so under the "invited error" doctrine.

{¶ 77} The record reflects that Knott did not raise the issue of whether RevSoft should be treated as a Chapter C or Subchapter S corporation for tax purposes either before or during trial. Knott initially raised this issue to the magistrate in his posttrial brief submitted after the damages hearing.

{¶ 78} At that time, Knott suggested to the magistrate that Moll's valuation of RevSoft, and subsequently his calculation of Knott's damages, would depend on the magistrate's ruling on three threshold legal issues: (1) whether RevSoft should be treated as a Subchapter S corporation or as a Chapter C corporation for purposes of taxing income, (2) whether minority and marketability discounts should be taken, and (3) whether a buy-in amount should be deducted from Knott's 50 percent ownership interest.

{¶ 79} Attached to his brief, was a calculation of RevSoft's valuation as a Subchapter S corporation (no payment of income tax), which valued RevSoft at $6,200,000, as opposed to Moll's valuation of RevSoft as a Chapter C corporation at $3,600,000.

{¶ 80} In his decision of June 1, 2007, the magistrate did not expressly rule upon the "legal issues"; rather, he accepted Moll's valuation and calculation of Knott's damages to be $424,000 which was determined based upon Chapter C taxation, a deduction for minority and marketability discounts, and deduction for a buy-in price.

{¶ 81} Under the doctrine of "invited error," it is well settled that "a party will not be permitted to take advantage of an error which [he himself] invited or induced the trial court to make." *State ex rel. Smith v. O'Connor* (1995), 71 Ohio St.3d 660, 663, 646 N.E.2d 1115, citing *State ex rel. Fowler v. Smith* (1994), 68 Ohio St.3d 357, 359, 626 N.E.2d 950. See also *Lester v. Leuck* (1943), 142 Ohio St. 91, 26 O.O. 280, 50 N.E.2d 145, paragraph one of the syllabus. As the Ohio Supreme Court has stated: " 'The law imposes upon every litigant the duty of vigilance in the trial of a case, and even where the trial court commits an error to his prejudice, he is required then and there to challenge the attention of the court to that error, by excepting thereto, and upon failure of the court to correct the same to cause his exceptions to be noted. It follows, therefore, that, for much graver reasons, a litigant cannot be permitted, either intentionally or unintentionally, to induce or mislead a court into the commission of an error and then procure a reversal of the judgment for an error for which he was actively responsible.' " *Lester* at 92–93, 50 N.E.2d 145, quoting *State v. Kollar* (1915), 93 Ohio St. 89, 91, 112 N.E. 196.

{¶ 82} The trial court applied the invited-error doctrine and ruled that Knott's subchapter S analysis "was never offered into evidence by the Plaintiff's expert or

any other party during the trial to the Court," and therefore, "this theory is unsubstantiated by any expert or evidence before the Magistrate and was properly rejected by the Magistrate."

{¶ 83} Based upon our review of the record, we are persuaded that Knott should not be permitted to attempt to reform Moll's expert testimony. The status of RevSoft as a subchapter S corporation was clearly established at all pertinent times. However, Moll's expert opinion reports and testimony before the magistrate indicate that treating RevSoft as a Chapter C corporation for valuation purposes was conservative yet appropriate. Therefore, the magistrate was entitled to rely on this competent, credible evidence in reaching his decision.

{¶ 84} Accordingly, we find no error in the trial court's application of the invited-error doctrine in this instance.

{¶ 85} Knott's third assignment of error is overruled.

{¶ 86} In summary, we overrule RevSoft's first, second, and third assignments of error; we sustain Knott's first assignment of error; and we overrule Knott's second and third assignments of error. We affirm in part and reverse in part the judgments of the Delaware County Court of Common Pleas, and this cause is remanded to the trial court for further proceedings relating only to the issue of prejudgment interest, consistent with this opinion and the law.

Judgment affirmed in part
and reversed in part,
and cause remanded.

FARMER, P.J., and EDWARDS, J., concur.