CRENSHAW, Judge.
 

 Jan L. Murley (the Former Wife) appeals the final judgment of dissolution of her marriage to Karl E. Wiedamann (the Former Husband) and the order requiring her to pay fifty percent of the expenses on the parties’ jointly-owned Naples condominium beyond the date of the final judgment and interest on amounts owed to the Former Husband.
 
 [1]
 
 We reverse and remand for further proceedings because the trial court misinterpreted the plain language of the parties’ prenuptial agreement in determining that the Former Wife’s stock and stock options were marital property. We conclude that the trial court used an improper date for valuation of the marital estate and erred in requiring the Former Wife to pay condominium expenses beyond the date of the final judgment and interest on amounts owed to the Former Husband. The Former Wife also appeals the trial court’s finding that the Former Husband’s Schwab account was his separate nonmarital property. Because documentation shows the funds are traceable back to separate assets the Former Husband owned prior to the marriage, we affirm the award of the Schwab account to the Former Husband.
 

 The parties entered into a prenuptial agreement in Cincinnati, Ohio, in December 1988 before marrying in January
 
 *29
 
 1989. Over the course of the eighteen-year marriage, the Former Wife received stock options from her employment with Procter & Gamble and stock options, deferred stock units, and director’s fees from her service as an independent member of the Board of Directors of the Clorox Corporation. The Former Husband filed a petition for dissolution of marriage on December 5, 2005, and sought to enforce the parties’ prenuptial agreement under Ohio law. Both parties argued that the prenuptial agreement was clear and unambiguous, but disagreed as to whether the Former Wife’s stock and stock options from Procter & Gamble and Clorox constituted marital property under the prenuptial agreement.
 

 Section 1 of the prenuptial agreement titled “Separate Nonmarital Property” contains the following language:
 

 All rights and interests of Jan and Karl now or hereafter vested in their respective participant’s account under the Procter & Gamble Company Employees Profit Sharing Plan or under any other Profit Sharing, Pension or Employee Benefit Plan of any other employer together with all additional employer contributions thereto made after their marriage, as well as all earnings thereon and appreciation shall be regarded as such party’s separate nonmarital property. All rights and interests of Jan and Karl now existing or hereafter acquired or arising under any other Employee Benefit Plan of any current or future employer
 
 {such as, by tvay of illustration only, stock options, restricted stock grants or flexible benefit
 
 plans) shall be regarded as such party’s no[n]marital property.
 

 (Emphasis added.) Section 3(a) of the prenuptial agreement provides:
 

 Any of Jan’s present or future rights to retirement benefits, profit sharing or other forms of retirement plans and/or pensions from her being duly employed shall be her separate nonmarital pro-peerty [sic].
 

 The trial court found that the disputed language of the prenuptial agreement was “ambiguous or ill defined as it relates to ‘Employee Benefit Plan.’ ” After considering extrinsic evidence, the court concluded that under the terms of the prenuptial agreement, all of the Former Wife’s stock and stock options from Procter
 
 &
 
 Gamble and Clorox were marital assets to be divided equally between the parties.
 

 Because the plain language of the prenuptial agreement excludes stock options from marital property, we find that the trial court erred in determining that the prenuptial agreement was ambiguous and concluding that the Former Wife’s stock options from Procter & Gamble and Clorox constituted marital property. By its terms, the prenuptial agreement is to be interpreted under Ohio law. Ohio and Florida courts employ the same principles of contract interpretation. “A trial court’s interpretation of a prenuptial agreement is reviewed de novo, as such agreements are governed by the law of contracts.”
 
 Taylor v. Taylor,
 
 1 So.3d 348, 350 (Fla. 1st DCA 2009). When interpreting a contract, the court must first examine the plain language of the contract for evidence of the parties’ intent.
 
 Royal Oak Landing Homeowner’s Ass’n, Inc. v. Pelletier,
 
 620 So.2d 786, 788 (Fla. 4th DCA 1993);
 
 Knott v. Revolution Software, Inc.,
 
 181 Ohio App.3d 519, 909 N.E.2d 702, 712 (2009). “In construing the language of a contract, courts are to be mindful that ‘the goal is to arrive at a reasonable interpretation of the text of the entire agreement to accomplish its stated meaning and purpose.’ ”
 
 Taylor,
 
 1 So.3d at 350 (quoting
 
 Delissio v. Delissio,
 
 821 So.2d 350, 353 (Fla. 1st DCA 2002)). ‘Words and phrases are given their common and ordinary meanings ab
 
 *30
 
 sent specific contractual definitions.”
 
 Knott,
 
 909 N.E.2d at 712. “If a contract is reasonably susceptible of more than one meaning, then it is ambiguous and extrinsic evidence of reasonableness or intent can be employed.”
 
 Id.; see Taylor,
 
 1 So.3d at 350 (stating that “a trial court should not admit parol evidence until it first determines that the terms of a contract are ambiguous”).
 

 We conclude that the plain language of the prenuptial agreement excludes the Former Wife’s stock and stock options from the marital estate. Section 1 of the prenuptial agreement titled “Separate Nonmarital Property,” expressly and unambiguously states that “[a]ll rights and interests . -.. acquired or arising under any other Employee Benefit Plan ... (such as, by way of illustration only,
 
 stock options,
 
 restricted stock grants or flexible benefit plans) shall be regarded as such party’s no[n]marital property.” (Emphasis added.) The prenuptial agreement provides no specific definition of “any other Employee Benefit Plan,” but uses stock options as an example of a right or interest acquired under an Employee Benefit Plan to be treated as nonmarital property. This plain interpretation of the language is consistent with the parties’ intent to protect their assets should the parties choose to terminate the marriage. Because the plain language of the prenuptial agreement provides a reasonable interpretation that is consistent with the goals of the agreement, the trial court erred in considering extrinsic evidence to conclude that the Former Wife’s Procter & Gamble stock and stock options wex-e marital assets to be divided between the pai'ties.
 
 [2]
 
 We also find that the Former Wife’s Clorox Corporation stock options, deferred stock units, and director’s fees constitute employee benefits under the prenuptial agixeement and are therefore separate nonmarital property.
 
 [3]
 

 We find the tidal coui't abused its disci’etion when it used the date of the final hearing as the date for the valuation of the marital net worth because the parties were separated two years before the final hearing. Under Ohio law, the marital estate includes assets acquired from the date of the marriage to the date of the final hearing, unless “the court determines that the use of either or both of the dates ... would be inequitable” and then “the court may select dates that it considers equitable in determining marital pi'operty.” Ohio Rev.Code Ann. § 3105.171(A)(2)(a)-(b). Here, it is inequitable to use the date of the final hearing for valuation whex-e the parties have been living separately for two years.
 
 See Rogers v. Rogers,
 
 Nos. 96APF10-1333, 96APF01-67, 1997 WL 559479, at *7 (Ohio App. Sept. 2, 1997) (finding the date of separation as an appropriate valuation date where “the totality of the circumstances and equitable considei'ations between the parties demonstrate that there was a clear and bilateral breakdown of the marriage and the parties have ceased contributing to each other ... as would partners in a shared enterprise or joint undertaking.”);
 
 Edmiston v. Edmiston,
 
 Nos. C-900915, C-900921, 1992 WL 19413, at *2 (Ohio Ct.App. Feb. 5, 1992) (holding that the date of the parties’ separation was the proper date for valuation). Accordingly, we instruct the tidal court to use the date of the parties’ sepai'ation rather than the date of the final hearing to determine the value of the marital estate.
 

 
 *31
 
 We also conclude there was no basis for the trial court to require the Former Wife to pay fifty percent of the expenses on the parties’ jointly-owned Naples condominium where the Former Husband now lives, and interest on the amounts owed to the Former Husband. Although the parties previously stipulated that they are jointly liable for the mortgage payments on the condominium through the date of the final judgment, the final judgment imposed no further financial obligation on the Former Wife. Therefore, there was no basis for the court to subsequently order the Former Wife to pay these additional expenses and interest.
 

 The Former Wife argues that the trial court erred in holding that the Former Husband’s Schwab account was his separate nonmarital property because commingling destroyed the account’s non-marital character. However, we affirm the award of the Schwab account to the Former Husband and find the Former Husband met his burden of proof that the property is separate because documentary evidence shows the funds held in the account are traceable to separate assets which the Former Husband owned prior to the marriage.
 
 See Fisher v. Fisher,
 
 No. 20898, 2004 WL 8561214, at *3 (Ohio Ct. App. Dec. 23, 2004) (finding that commingled property can be traced to its prior separate identity).
 

 Because the plain language of the prenuptial agreement excludes the Former Wife’s stock options from the marital estate, and because the trial court erred in requiring the Former Wife to pay additional condominium expenses and interest on amounts owed to the Former Husband, we reverse the trial court’s final judgment of dissolution and the subsequent order requiring the Former Wife to pay fifty percent of the condominium expenses plus interest. We remand for further proceedings consistent with this opinion, and instruct the trial court to use the parties’ date of separation for valuation of the marital net worth and the division thereof. We affirm the award of the Schwab account to the Former Husband.
 

 Affirmed in part, reversed in part, and remanded with directions.
 

 KELLY and KHOUZAM, JJ„ Concur.
 

 [1]
 

 . Specifically, the trial court ordered the Former Wife to pay fifty percent of the mortgage, condominium assessments, real estate taxes, and condominium insurance, “from the date of [dissolution] to the date the Former Husband receives the marital assets, equalization payment and title to the Naples condominium ... and then removes [the Former Wife's] name off the mortgage.’’ The parties previously stipulated that they are jointly liable through the date of the final judgment for the mortgage payments on the condominium.
 

 [2]
 

 . These errors in interpretation will require the trial court to recalculate equitable distribution between the parties.
 

 [3]
 

 . The Clorox stock options and deferred stock units also fall within the Former Wife’s retirement plan, which is excluded under section 3(a) of the prenuptial agreement.