SILBERMAN, Chief Judge.
William P. Connell, as personal representative of the estate of Peter W. Connell, deceased, appeals the trial court’s order, following a motion for rehearing, in which the court modified its initial determination as to a petition for aid in marshaling assets. The original order determined that a men’s Rolex watch purchased for $58,350 and a men’s diamond ring purchased for $19,386 were assets of the estate. On rehearing, the court determined that the watch and ring were the sole property of Fana Argiropoulos Connell, who was Peter Connell’s wife. Because the trial court properly determined in its original order that the watch and ring were estate assets, we reverse the order on rehearing.
Peter Connell (the decedent) passed away on March 22, 2010, when he was ninety-five years old. He was survived by Fana, whom he married on February 7, 2009. Prior to the marriage they had executed an Antenuptial Agreement.
Paragraph 3.2 of the Antenuptial Agreement provided, in pertinent part, for the decedent’s acquisition of separate property during the marriage as follows:
3.2 Waiver of Rights During Lifetime by ARGIROPOULOS. Except as otherwise specifically provided for herein, all property, both real and personal, tangible and intangible, belonging to CONNELL prior to the date of the marriage ceremony, or acquired by him thereafter, to include without limitation that property listed as his in Exhibit “B” hereto, if any, shall remain and be the sole and separate property of CON-NELL, and ARGIROPOULOS hereby waives and disclaims any and all right, title and interest therein arising by operation of the intended marriage of the parties under any law or statute of the State of Florida or of any other jurisdiction in which the parties may reside or in which such properties may be located, whether now in force or arising subsequent hereto.
Paragraph 4.2 of the Antenuptial Agreement dealt, in pertinent part, with the acquisition of jointly-held property during the marriage as follows:
4.2 Joint Property. The parties acknowledge that they may acquire jointly held property during the term of the marriage and the parties hereby agree that any property other than a marital home hereafter acquired jointly or in their joint names shall become and be considered the joint property of the parties, each party being entitled to one-half (1/2) of all the value associated with the ownership of said joint property as well as being required to assume one-half (1/2) of all liabilities attendant with the ownership of same. Upon the death of one party during the continuance of the marriage and prior to any divorce, dissolution or separation of the parties, such interest shall be dealt with in accordance with the provisions of Paragraph Five (5) of this Agreement.
Paragraph 5.2 of the Antenuptial Agreement provided, “Upon the death of one party during the continuation of the mar *1142 riage and prior to any divorce, dissolution or separation of the parties, the survivor shall succeed to the entire interest of the deceased party in all other jointly-owned property.” Paragraph 5.3 directed that except as to the marital home and jointly-owned property, “each of the parties shall have the absolute and unrestricted privilege and power to dispose, on death, of any and all property which may belong solely to him or her at such time.”
After the execution of the Antenuptial Agreement, the decedent and Fana (referred to collectively as the Connells) established a joint checking account at Bank of America. The deposit agreement provided a choice to create a joint tenancy with the right of survivorship or a tenancy by the entireties. The Connells chose to create a joint tenancy with the right of survivorship. The Connells customarily kept $50,000 in the joint account. The account was funded almost entirely with the decedent’s separate funds. When the balance approached $10,000, Fana would call the decedent’s bank and have funds from the decedent’s separate trust transferred to the joint account. They both used the joint account to purchase anything they needed.
The decedent owned a jewelry store before he retired, and he enjoyed wearing expensive jewelry. In August 2009 the decedent was at a shopping mall with Fana, his son, John, the son’s wife, and a friend of the son. The decedent went into a jewelry store to look at watches and selected the gold and diamond Rolex watch at issue which cost $58,350. Because the joint checking account did not have sufficient funds to cover the purchase, Fana asked the son and son’s friend to lend money by charging a portion of the purchase price; the son charged $10,000 to his credit card and the friend charged a little over $9000 on his credit card. The balance was paid partially with the Connells’ debit card from the joint account and partially with the Connells’ joint credit card that was paid for from the joint account. And Fana paid for $205 of the purchase price with cash from her wallet. The son and his friend were reimbursed with funds from the joint account.
With respect to the ring, the decedent purchased it on February 5, 2010, as a replacement for a ring that Fana had given to him as a gift in late 2009 for his birthday and Christmas. The decedent told Fana that he wanted to exchange the ring she gave him for a larger ring. She agreed but told him he would have to pay the additional cost because she could not afford more than she had already paid. The decedent exchanged the ring and received a credit of $2386; he then paid an additional $17,000 for the new three-carat diamond ring he selected for himself.
The decedent wore the watch and ring every day. Before he went to bed he took them off and put them in a pocket of one of his suits. In the two weeks before his death, the decedent was hospitalized twice. Before going to the hospital, he gave the watch and ring to Fana to put away, and she put them in her purse.
After the decedent passed away, the personal representative, William P. Con-nell, who is the decedent’s son, filed a verified petition for formal administration of the decedent’s estate. The trial court admitted the will to probate and issued letters of administration. The personal representative filed an inventory and listed the Rolex watch and diamond ring as assets of the estate. A copy of the inventory was served on Fana’s counsel.
After Fana refused to turn over the watch and ring, the personal representative filed his petition for aid in marshaling assets. The trial court conducted an evi-dentiary hearing on the petition. On May *1143 18, 2011, the court rendered its order on the petition and determined that the watch and ring were assets of the estate. In its order the trial court stated as follows:
Items of personal property such as rings and watches do not have documentation of title. It is the finding of the Court that the Decedent purchased these items using his personal funds. The items are masculine in nature and not an item that would be used by the spouse on a daily basis. This clearly indicates his intention, consistent with his actions, to use these items of jewelry for his personal benefit. The evidence does not support Fana Connell’s claim that the Decedent had donative intent when he gave her the two items of jewelry immediately prior to his final hospitalization. The pattern established by the parties was for her to retain the items for safe keeping to prevent their disappearing in the hospital. There is no doubt, had he returned from this hospitalization that he would have again resumed using both the ring and watch.
On Fana’s timely motion for rehearing, the trial court conducted a hearing at which no new evidence was presented. Instead, Fana’s counsel argued that the watch and ring should be considered joint property because they were purchased with funds from the Connells’ joint account and based on the language in the Antenup-tial Agreement. In announcing its ruling, the trial court indicated that it remained unconvinced that the decedent made a gift of the watch and ring to Fana prior to his death. But the court believed that
the District Court would find that the property was acquired during the marriage as jointly-held property based upon the source of the funds. While there’s no doubt that the watch and rings were personal to the decedent, I think under a strained reading of the prenuptial agreement that they did treat it as jointly-acquired property and I think I’m forced to rule that way. I would be delighted if the District Court saw it differently, but I just don’t think they would.
Accordingly, on July 21, 2011, the trial court rendered its order granting Fana’s motion for rehearing and modifying in part the original order by ruling that the watch and ring were the sole property of Fana. The personal representative timely filed his notice of appeal from the order on rehearing.
The trial court’s determination that the decedent did not make a gift of the watch and ring to Fana is not at issue on appeal. The trial court made a factual determination in the original order to the effect that the decedent’s delivery of the watch and ring to Fana prior to his hospitalization was not made with the intention of gifting the property to her, but rather it was a temporary delivery for the purpose of safekeeping while he was in the hospital. The trial court did not change this ruling on rehearing. The only issue on appeal is whether the decedent individually owned the watch and ring or whether the Con-nells jointly owned the watch and ring such that it passed to Fana by right of survivorship.
Our review of questions of law, including those of contract construction, is de novo. See Bosem v. Musa Holdings, Inc., 46 So.3d 42, 44 (Fla.2010); Murley v. Wiedamann, 25 So.3d 27, 29 (Fla. 2d DCA 2009). Although the review of a trial court’s factual findings is for whether competent, substantial evidence supports the findings, the review of the application of the law to the facts is de novo. See Tampa HCP, LLC v. Bachor, 72 So.3d 323, 326 (Fla. 2d DCA 2011). The personal representative correctly argues that the trial court committed an error of law in deter *1144 mining that the Connells jointly owned the watch and ring because they were purchased with joint funds and were “jointly acquired.”
It is undisputed that the joint checking account was a joint tenancy with a right of survivorship, not a tenancy by the entireties. When a joint account holder withdraws funds from a bank account that is held as a joint tenancy with the right of survivorship, it “terminates the ‘joint tenancy nature of the [funds] and severs the right of survivorship as to the funds withdrawn.’ ” Wexler v. Rich, 80 So.3d 1097, 1100 (Fla. 4th DCA 2012) (quoting Sitomer v. Orlan ex rel. Sitomer, 660 So.2d 1111, 1114 (Fla. 4th DCA 1995) (alteration in Sitomer)). When a joint tenant conveys an interest to a stranger, it “destroys the unities of possession and title.” Sitomer, 660 So.2d at 1114. We also note that Fana consented to the withdrawal of the funds for the jewelry purchases, so the decedent was not liable to her for her share of the joint account. See Nationsbank, N.A. v. Coastal Utils., Inc., 814 So.2d 1227, 1230 (Fla. 4th DCA 2002) (stating that “the withdrawing joint tenant is liable to the joint owner for that person’s share of the withdrawn funds”). Thus, once the funds were withdrawn from the Connells’ joint checking account, the funds lost their joint character.
Moreover, the fact that the decedent purchased the watch and ring with funds from the joint checking account (and a small contribution of cash from Fana) while they were shopping together does not make the watch and ring the joint property of the Connells. Rather, it is for whom the watch and ring were purchased rather than how they were purchased that is important. Paragraph 3.2 of the Ante-nuptial Agreement allowed the decedent to acquire separate property after the marriage. Except for the marital home, paragraph 5.3 allowed him, on death, to dispose of property that was not jointly owned. Paragraph 4.2 provided that “any property other than a marital home hereafter acquired jointly or in their joint names shall become and be considered the joint property of the parties.” Fana seems to equate the term “acquired jointly” with her being “involved” in the purchases that were made when they were together at the jewelry stores. However, the circumstances reveal that she was merely assisting the decedent buy a watch and ring for himself, not that they intended to jointly own the jewelry.
A joint tenancy has the characteristic of survivorship and to create a joint tenancy four unities must be present: the unities of possession, interest, title, and time. Beal Bank, SSB v. Almand & Assocs., 780 So.2d 45, 53 (Fla.2001). The unity of possession is joint ownership and control. Id. at 52. Here, the unity of possession was not present in either the watch or the ring. The watch and ring were intended for the decedent’s exclusive use. The decedent had been in the jewelry business, and he enjoyed expensive jewelry. He had the possession and use of the watch and ring. In fact, the trial court even made the oral finding on rehearing that the items were “personal to the decedent.”
Furthermore, the watch and ring were jewelry items designed for a man. Fana never wore or used the watch and ring. And she referred to the items as “his” jewelry. When the decedent was not wearing the watch and ring, he put them in the pocket of one of his suits. Fana only took possession to store them for safekeeping before the decedent went to the hospital. The trial court found in its original order that if the decedent had returned from the hospital, “he would have again resumed using both the ring and *1145 watch.” In the original order the trial court also determined that the circumstances indicated the decedent’s “intention, consistent with his actions, to use these items of jewelry for his personal benefit.”
The circumstances here failed to show the unity of possession as to Fana with respect to the watch and ring. Therefore, the watch and ring were the separate property of the decedent. The trial court made the correct determination in its original order; accordingly, we reverse the order on rehearing.
Order on rehearing reversed.
KELLY, J., and DAKAN, STEPHEN L., Associate Senior Judge, Concur.