[Cite as *State v. Hoegler*, 2013-Ohio-997.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

PORTAGE COUNTY, OHIO


| STATE OF OHIO, | : | **O P I N I O N** |
|---|---|---|
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NOS. 2012-P-0039 and 2012-P-0040** |
| ERIC G. HOEGLER, | : | |
| Defendant-Appellee. | : | |


Criminal Appeals from the Portage County Municipal Court, Ravenna Division, Case Nos. R2011 TRC 15973 and R2011 CRB 03266.

Judgment:  Reversed and remanded.


*Victor V. Vigluicci,* Portage County Prosecutor, and *Pamela J. Holder,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH  44266 (For Plaintiff-Appellant).

*George G. Keith,* 135 Portage Trail, P.O. Box 374, Cuyahoga Falls, OH  44223 (For Defendant-Appellee).


CYNTHIA WESTCOTT RICE, J.

{¶1}   The state of Ohio appeals the judgment of the Portage County Municipal Court, Ravenna Division, granting a motion in limine seeking to exclude the results of an Intoxilyzer 8000 test filed by appellee, Eric G. Hoegler.  This court recently held in *State v. Carter*, 2012-P-0027, 2012-Ohio-5583 and *State v. Rouse*, 2012-P-0030, 2012-Ohio-5584, that the Intoxilyzer 8000 is presumed reliable, and that the defendant is entitled, but has the burden of production, to specifically challenge the general reliability of the

Intoxilyzer 8000. Based on this court's precedent in *Carter* and *Rouse*, we reverse the trial court's judgment, and remand this matter for further proceedings consistent with this opinion.

{¶2} On December 4, 2011, appellee was stopped for failing to stop at a stop sign. The officer noticed appellee exhibited a strong odor of alcohol and slurred speech. Appellee failed field sobriety tests and was charged with operating a vehicle under the influence ("OVI") pursuant to R.C. 4511.19(A)(1)(a). At the station, appellee's breath test revealed a blood-alcohol concentration of .132. Thus, he was also cited for OVI pursuant to R.C. 4511.19(A)(1)(d).

{¶3} Appellee filed a boilerplate motion to suppress and a motion in limine seeking to exclude the results of his breath test based upon the alleged general unreliability of the Intoxilyzer 8000. After a hearing, the trial court granted appellee's motion, concluding that the state was required to produce evidence that the Intoxilyzer 8000 is reliable in order for his test results to be admissible at trial. The trial court granted the state's motion to stay execution of the judgment.

{¶4} The state appeals the trial court's judgment, asserting the following for its sole assignment of error:

{¶5} "The Portage County Municipal Court erred in permitting a general attack on the scientific reliability of the Intoxilyzer 8000 contrary to Ohio statutes and well-established case law."

{¶6} We review a trial court's legal determinations at a suppression hearing de novo. *State v. Dijsheff*, 11th Dist. No. 2005-T-0001, 2006-Ohio-6201, ¶19.

2

{¶7} In *Carter*, this court followed *State v. Vega*, 12 Ohio St.3d 185 (1984) in acknowledging that the General Assembly in R.C. 3701.143 authorized the Director of Health to determine techniques for chemically analyzing the amount of alcohol contained in a person's breath. *Carter* at ¶16-17. Further, this court recognized that R.C. 4511.19(D)(1)(b) requires breath samples be analyzed for alcohol content in accord with methods approved by the Director of Health pursuant to R.C. 3701.143. *Carter* at ¶20. This court noted that the Director of Health, at Ohio Adm.Code 3701-53-02(A)(3), approved the Intoxilyzer 8000 as an evidential breath-testing instrument. *Carter* at ¶21.

{¶8} Further following *Vega*, this court in *Carter* stated that R.C. 4511.19 represented a legislative determination that breath-testing devices adopted by the Director of Health are generally reliable. *Carter* at ¶24, citing *Vega* at 188. And this court went on to hold that, although the Intoxilyzer 8000 is presumed reliable, a defendant is entitled to make specific challenges to the general reliability of the Intoxilyzer 8000. *Carter* at ¶43, citing *Vega*. In making such a challenge, however, the defendant has the burden of production. *Carter*, *supra.*

{¶9} Pursuant to *Carter* and *Rouse*, we hold the trial court erred in requiring the state to produce evidence of the Intoxilyzer 8000's general reliability, in granting appellee's motion, and in excluding the results of his breath test.

{¶10} Therefore, on remand, appellee is entitled, but has the burden of production, to specifically challenge the general reliability of the Intoxilyzer 8000.

{¶11} For the reasons stated in this opinion, it is the judgment and order of this court that the judgment of the Portage County Municipal Court, Ravenna Division, is

reversed, and this matter is remanded to the trial court for further proceedings as set forth in this opinion.

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion,

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

_____

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion.

{¶12} I concur in the judgment of this court, that, pursuant to R.C. 4511.19(D)(1)(b) and R.C. 3701.143, as interpreted by *State v. Vega*, 12 Ohio St.3d 185, 465 N.E.2d 1303 (1984), a defendant may not challenge the general reliability of the Intoxilyzer 8000 as a testing instrument approved by the Ohio director of health.

{¶13} I write separately, however, because I have reservations with this court's reading of the Ohio Supreme Court's *Vega* decision as creating a rebuttable presumption as to the general reliability of approved testing instruments.

{¶14} In *Vega*, the Ohio Supreme Court made clear that "an accused may not make a general attack upon the reliability and validity of the breath testing instrument." *Id.* at 190. The court explained that, by enacting R.C. 4511.19, the General Assembly "ha[s] legislatively resolved the questions of the reliability and relevancy of intoxilyzer tests." *Id.* at 188. "[The judiciary must recognize] the necessary legislative determination that breath tests, properly conducted, are reliable irrespective that not all experts wholly agree and that the common law foundational evidence has, for admissibility, been replaced by statute and rule; and that the legislative delegation was

4

to the Director of Health, not the court, the discretionary authority for adoption of appropriate tests and procedures, including breath test devices." *Id.* at 188-189, citing *State v. Brockway*, 2 Ohio App.3d 227, 232, 441 N.E.2d 602 (4th Dist.1981).

{¶15} The language of *Vega* does not support the position that a rebuttable presumption exists with regard to a testing instrument's general reliability. In fact, *Vega* only speaks of a rebuttable presumption in the context "that one is under the influence of alcohol if there is a specific concentration of alcohol by weight in one's blood." *Id.* at 187. *Vega* did not speak of a presumption, rebuttable or otherwise, in connection with the general reliability of testing instruments.

{¶16} Under *Vega*, the admissibility and weight of the results of a breath testing instrument may be challenged on other grounds. When duly challenged, the State must demonstrate that the bodily substance was "analyzed in accordance with methods approved by the director of health" and "by an individual possessing a valid permit." R.C. 4511.19(D)(1)(b). "There is no question that the accused may * * * attack the reliability of the specific testing procedure and the qualifications of the operator," as well as present "expert testimony as to testing procedures at trial going to weight rather than admissibility." *Vega* at 189. Thus, "[t]he defendant may still challenge the accuracy of his specific test results, although he may not challenge the general accuracy of the legislatively determined test procedure as a valid scientific means of determining blood alcohol levels." *State v. Tanner*, 15 Ohio St.3d 1, 6, 472 N.E.2d 689 (1984); *Columbus v. Aleshire*, 187 Ohio App.3d 660, 2010-Ohio-2773, 933 N.E.2d 317, ¶ 27 (10th Dist.) ("while [supreme court precedent] permits evidentiary objections to the test results challenging issues such as competency, admissibility, relevancy, authenticity, and

5

credibility, it does not indicate that a challenge to the 'general reliability' is among the permissible challenges").

{¶17} By reading *Vega* as only creating a rebuttable presumption of general reliability, this court necessarily places the burden of production on the defendant at the suppression hearing. In a typical motion to suppress hearing, the movant bears the burden of "stat[ing] with particularity the grounds upon which it is made." Crim.R. 47. This burden is distinct from the burden to produce evidence, which this court places upon defendants when challenging the reliability of the machine, and which the State would otherwise bear in a pre-trial motion to suppress. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 24 ("[a]fter a defendant challenges the validity of test results in a pretrial motion, the state has the burden to show that the test was administered in substantial compliance with the regulations prescribed by the Director of Health"). Thus, this court's decision disrupts the ordinary course of pretrial proceedings, and creates an ambiguous situation where the parties will have to determine who bears the burden of production on which issues, depending on how the arguments are characterized.

{¶18} This situation is avoided by a more faithful application of *Vega*, whereby the State must demonstrate that a bodily substance was "analyzed in accordance with methods approved by the director of health," while the defendant, at trial, may challenge the accuracy of his or her specific test results and the qualifications of the person administering the test and otherwise strive to discredit the weight to be given the specific test results.

{¶19} With these reservations, I concur in the judgment of this court.

_____

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

{¶20} R.C. 4511.19(D)(1)(b) does not mandate admissibility of breath test results derived from the Intoxilyzer 8000. Rather, that statute which, by its plain language controls the issue in this case, vests the trial court with discretion regarding admissibility despite approval from the director. I, therefore, respectfully dissent.

{¶21} R.C. 3701.143 empowers the director to approve breath testing devices, and R.C. 4511.19(D)(1)(b) grants trial courts the discretion to admit the results from approved devices without further proof of reliability when circumstances warrant. Although some claim the contrary, nobody is correct all the time. In recognizing human fallibility, the legislature had the wisdom to vest within the trial court the discretion per R.C.4511.19(D)(1)(b) to conduct further inquiry when there is an issue as to the reliability of an approved breath testing device before admitting the results.

{¶22} R.C. 4511.19(D)(1)(b) states that "[i]n any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court *may* admit evidence on the concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation[,]" and "[t]he bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of

7

health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code." (Emphasis added.)

{¶23} The statute does not use the word "shall," which would mandate admission regardless of the circumstances. Rather, the statute uses the word "may." For purposes of statutory construction, "use of the word 'may' is generally construed to make the provision in which it is contained optional, permissive, or discretionary * * *." *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 107 (1971); *State v. Suchevits*, 138 Ohio App.3d 99, 102 (11th Dist. 1999).

{¶24} In this case, the trial court exercised its discretion not to admit the breath test absent proof from the state that the Intoxilyzer 8000 is generally reliable, a decision consistent with the discretion it possesses under R.C.4511.19(D)(1)(b). As reliability presents a threshold admissibility issue, reliability, as opposed to the weight to be afforded any admitted evidence, is one for the trial court. *Knott v Revolution Software Inc.* 181 Ohio App.3d 519, 2009-Ohio-1191, ¶45 (5th Dist.); *State v. Riley*, 6th Dist. No. WD-03-076, 2007-Ohio-879, ¶27 (expert testimony must be deemed reliable before it is deemed admissible.); *Saad v. Shimano American Corp.*, 2000 U.S. Dist. LEXIS 10974, *7 (N.D. Ill. 2000)(The Supreme Court has made it clear that the courts must allow into evidence only expert testimony that meets certain threshold standards of reliability and usefulness).

{¶25} Moreover, the determination of evidential reliability necessarily implicates the defendant's substantive due process rights.

{¶26} "Substantive due process, [although an] ephemeral concept, protects specific fundamental rights of individual freedom and liberty from deprivation at the

8

hands of arbitrary and capricious government action. The fundamental rights protected by substantive due process arise from the Constitution itself and have been defined as those rights which are 'implicit in the concept of ordered liberty.' (* * *) While this is admittedly a somewhat vague definition, it is generally held that an interest in liberty or property must be impaired before the protections of substantive due process become available." *State v. Small,* 162 Ohio App.3d. 375, 2005-Ohio-3813, ¶11 (10th Dist.), quoting *Gutzwiller v. Fenik*, 860 F. 2d. 1317, 1328 (6th Cir. 1989).

**{¶27}** However vague the conceptual parameters of one's substantive due process guarantees may be, the following principle is clear; "[substantive] * * * due process is violated by the introduction of seemingly conclusive, but actually unreliable evidence." *Barefoot v. Estelle,* 463 U.S. 880, 931, fn. 10 (1983).

**{¶28}** The trial court was aware that other courts had deemed the Intoxilyzer 8000 unreliable even though it was approved. Against this backdrop, the court ordered the state to establish the general reliability of the Intoxilyzer 8000 before admitting the results. Given the constitutional gravity of admitting unreliable results, however, and its statutory authority to act as gatekeeper regarding breath test results, the lower court's decision to require the state to produce evidence of the machines reliability was an eminently reasonable and sound legal decision. "[A]n abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11.

**{¶29}** Rather than present evidence of the general reliability of the Intoxilyzer 8000, the state took the position that the trial court could not require it to do so pursuant

9

to *Vega* and its progeny.  *Vega,* 12 Ohio St.3d 185 (1984).  I do not read *Vega* as holding that under no circumstances can a trial court exercise its discretion to require evidence of general reliability of an approved breath testing device as a condition to admissibility.

{¶30}  In *Vega,* the court held "* * * an accused is not denied his constitutional right to *present a defense* nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the *reliability of intoxilyzers in general.*"  (Emphasis added.)  *Id.* at 186.

{¶31}  Threshold admissibility was not at issue in *Vega.*  That is, the defendant made no challenge to the trial court's admission of his breath test result.  Instead, after the state presented its case and rested, the defendant attempted to present a "reliability" defense by attacking intoxilyzers in general.  *See also State v. Vega,* 5th Dist. No. CA-1766, 1993 Ohio App LEXIS 14350, *16 (Nov.22, 1983)(Hoffman, J., dissenting).  Unlike *Vega,* 12 Ohio St.3d 185, threshold admissibility is the issue in the case before us.  Moreover, unlike *Vega,* our case is not about the reliability of intoxilyzers in general.  Our case is limited to whether the Intoxilyzer 8000 is reliable.  In short, the circumstances at issue in *Vega* were fundamentally distinguishable from those in our case.

{¶32}  Additionally, the rule in *Vega* does not contemplate a situation where, as here, an approved device's general reliability has been assessed by other courts for both use in and out of this state and the device's reliability has been found suspect. *See State v. Johnson*, Portage County Municipal Court, January 6, 2012.  *Vega* expressly states that its holding does not involve a situation where the defense asserts

10

that there was an abuse of discretion by the director in approving the breath testing device at issue. *Vega* at 187, fn. 2. Obviously, in our case, if the Intoxilyzer 8000 is unreliable, approval would amount to an abuse of discretion and admission of the test results a violation of substantive due process.

{¶33} Breath tests are ""* * * generally recognized as being reasonably reliable on the issue of intoxication when conducted *with proper equipment* and by competent operators.'" (Emphasis added.) *Vega* at 186, quoting *Westerville v. Cunningham*, 15 Ohio St.2d 121, 128(1968). Thus, the central issue as presented in the case before us, does the Intoxilyzer 8000 qualify as "proper equipment"? The answer is "yes" if it is generally reliable and "no" if it is not. This is a query, however, that, under Ohio law, a trial court is entitled to resolve pursuant to R.C. 4511.19(D)(1)(b).

{¶34} In this case, the trial court exercised its discretion to safeguard the defendant's right to substantive due process by merely requiring the state to show the Intoxilyzer 8000 is generally reliable. Under the circumstances, this decision was sound and reasonable. This is particularly true in light of the fact that a trial court is vested with broad discretion in the admission or exclusion of evidence and in recognition that it has inherent power to exclude or strike evidence *on its own motion*. *Caroll v Caroll*, 7th Dist. No. 89-C-1, 1990 Ohio App. LEXIS 1339, *8 (April 5, 1990); *Neil v. Hamilton County*, 87 Ohio App.3d 670; *Oakbrook Realty Corp. v. Blout*, 48 Ohio App.3d 69, 70 (10th Dist. 1988).

{¶35} Given the foregoing point, there is no reason to remand this case to the trial court based upon perceived inadequacies in the motion to suppress. The trial court made it abundantly clear that it would not admit the test results absent proof of reliability

of the Intoxilyzer 8000. Requiring the proponent to establish the reliability of scientific evidence is something that a trial court *may require* as previously discussed. The state was well aware of what the trial court required when it ordered the state to produce evidence of the Intoxilyzer 8000's reliability, independent and irrespective of the contents of the motion to suppress. Accordingly, there is no procedural due process violation of the state's right to notice and an opportunity to be heard. The trial court's order was unambiguous and an exercise of the sound discretion as the gatekeeper of breath test result admissibility.

{¶36} When an appellate court [**14] is reviewing a pure issue of law, "the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Sertz v. Sertz*, 11th Dist. No. 2011-L-063, quoting *Beechler*, 2010-Ohio-1900 at ¶67.

{¶37} This appeal is centered around a discretionary decision made by the trial court. As I find the court's decision not only reasonable, but constitutionally astute, I would affirm the trial court's exclusion of the breath test in light of the state's refusal to present evidence on the issue.