IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

MARGIE SALYER,

      Appellant,

v.

TOWER HILL SELECT INSURANCE
COMPANY AND MASON DIXON
CONTRACTING, INC.,

      Appellees.

_____/

Case No. 5D22-345
LT Case Nos. 2019-CA-200
                2020-CA-1141

Opinion filed June 2, 2023

Appeal from the Circuit Court
for Lake County,
Lawrence J. Semento, Senior Judge.

Geoffrey B. Marks, of Law Offices of
Geoffrey B. Marks, Coral Gables, for
Appellant.

C. Ryan Jones, Scot E. Samis and
Brandon R. Christian, of Traub
Lieberman Straus & Shrewsberry, LLP,
St. Petersburg, for Appellee, Tower Hill
Select Insurance Company.

No Appearance for Remaining Appellee.

JAY, J.

Appellant sued her property insurer, Tower Hill Select Insurance Company ("Tower Hill"), for breach of contract after a hurricane damaged her property. The trial court found that Appellant lacked standing to sue because in the court's view, she had assigned all her policy rights to a third-party contractor. Accordingly, the court entered summary judgment for Tower Hill. Because we hold that the scope of the assignment is limited to work the contractor performed—of which none occurred—we reverse.

I.

Tower Hill insured Appellant's property in Lake County. Hurricane Irma damaged the property, and Appellant reported her insurance claim to Tower Hill. Later, she executed an "Insurance Direct Payment Authorization Form" in favor of Mason Dixon Contracting, Inc. ("Mason Dixon"). Under the heading, "Direct Payment Authorization," the document provides, "I hereby authorize and unecuivocally [sic] instruct direct payment of any benifits [sic] or proceeds for services rendered by Mason Dixon Contracting, Inc. to be made payable soley [sic] to Mason Dixon Contracting Inc. and sent exclusively to Mason Dixon Contracting, Inc. at [company address]." Later, under the heading, "Assignment of Insurance Benefits," the document states:

> I hereby assign all insurance rights, benefits, proceeds, and any causes of action under any applicable insurance policies to

2

Mason Dixon Contracting, Inc. for services rendered or to be rendered by Mason Dixon Contracting, Inc. By execting [sic] this document, I intend for all rights, benefits, and proceeds for services rendered by Mason Dixon Contracting, Inc. to be assigned solely and exclusively to Mason Dixon Contracting, Inc. [I]n this regard, I waive my privacy rights. I make this assignment in consideration for Mason Dixon Contracting, Inc.'s agreement tp [sic] perform labor, services, supply materials, and perform its obligations under this contract, including not requiring full payment at the time of service. I hereby unequivocally direct my insurance carrier(s) to release any and all information requested by Mason Dixon Contracting, Inc. [i]ts representative, and/or its attorney for the purpose of obtaining actual benefits to be paid by my insurance carrier(s) for services rendered or to be rendered.

After making an estimate of repairs that far exceeded Tower Hill's calculation of insured costs, Mason Dixon sued Tower Hill for breach of contract. Mason Dixon's complaint alleged that Appellant had assigned "all rights, title, interest and benefits" of her insurance policy to Mason Dixon "for services rendered and to be rendered to repair the damages to the property." While that case was pending, Appellant filed her own breach of contract suit against Tower Hill. Tower Hill moved to consolidate the two cases. Without objection, the trial court granted the motion "for the purposes of discovery."

Tower Hill moved for summary judgment against Appellant. The motion argued that Appellant gave up her standing to enforce the insurance policy when she assigned her benefits to Mason Dixon. Tower Hill's summary

3

judgment evidence included the direct payment authorization form quoted above.

Appellant opposed summary judgment, arguing, *inter alia*, that her assignment was limited to the work performed by Mason Dixon and that Mason Dixon had failed to perform any work. At the summary judgment hearing, counsel for Mason Dixon acknowledged that Mason Dixon had not performed any work at Appellant's property and indicated the company would do so *if* "additional money is paid."[1]

The trial court granted summary judgment for Tower Hill based on Appellant's lack of standing. The court concluded that Appellant executed a "broad and unambiguous" assignment of her insurance benefits to Mason Dixon, under which "she did not retain . . . any part" of her claim against Tower Hill. In this appeal, Appellant maintains the court erred by finding that her assignment of benefits to Mason Dixon extinguished her standing to sue Tower Hill. We agree.

## II.

An appellate court uses a de novo standard to review an order granting summary judgment. *Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.*, 760

---

[1] Tower Hill issued a check for $89,658.66, payable to both Appellant and Mason Dixon. Mason Dixon deposited the check into its bank account. Thus, Appellant has not received any services or proceeds in this matter.

4

So. 2d 126, 130 (Fla. 2000). Likewise, a de novo standard applies to questions of contractual interpretation and a party's standing to sue. *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013) (contracts); *Wells Fargo Bank, N.A. v. Morcom*, 125 So. 3d 320, 321 (Fla. 5th DCA 2013) (standing).

Florida law generally allows an insured party to assign its post-loss policy benefits. *See* § 627.422, Fla. Stat. (2018);[2] *W. Fla. Grocery Co. v. Teutonia Fire Ins. Co.*, 77 So. 209, 210–11 (Fla. 1917). When that happens, the "assignee stands in the shoes of the assignor and is able to maintain suit in its own name" against the insurance company. *United Water Restoration Grp., Inc. v. State Farm Fla. Ins. Co.*, 173 So. 3d 1025, 1027 (Fla. 1st DCA 2015). In turn, the assignor—having relinquished its policy benefits to a third party—loses the right to enforce the policy. *Cont'l Cas. Co. v. Ryan Inc. E.*, 974 So. 2d 368, 376 (Fla. 2008).

An assignment is like any other contract. *Hartford Ins. Co. of Midwest v. O'Connor*, 855 So. 2d 189, 191 (Fla. 5th DCA 2003). Thus, a court

---

[2] "The Legislature made significant statutory changes regarding assignments of insurance benefits, effective July 1, 2019." *Speed Dry, Inc. v. Anchor Prop. & Cas. Ins. Co.*, 302 So. 3d 463, 464 n.2 (Fla. 5th DCA 2020). Given the date of Appellant's assignment, "[t]hose changes are not at issue in this case." *Id.*

interprets it in accordance with contract law. *See, e.g.*, *Sidiq v. Tower Hill Select Ins. Co.*, 276 So. 3d 822 (Fla. 4th DCA 2019); *Nicon Constr., Inc. v. Homeowners Choice Prop. & Cas. Ins. Co.*, 249 So. 3d 681 (Fla. 2d DCA 2018); *Restoration 1 CFL v. State Farm Fla. Ins. Co.*, 189 So. 3d 340 (Fla. 5th DCA 2016).

An assignment of benefits can be tailored to the work that a contractor performs. *See, e.g.*, *Brown v. Omega Ins. Co.*, 322 So. 3d 98 (Fla. 4th DCA 2021); *Sidiq*, 276 So. 3d 822; *Nicon*, 249 So. 3d 681. For example, in *Sidiq*, the homeowners retained a contractor to perform emergency water mitigation services after they discovered a leak in their home. *Sidiq*, 276 So. 3d at 824. Their assignment of benefits to the contractor was virtually identical to the assignment in this case.[3]

---

[3] The "Assignment of Insurance Benefits" in *Sidiq* stated:

I, hereby, assign any and all insurance rights, benefits, proceeds and any causes of action under *any* applicable insurance policies to [United], for services rendered or to be rendered by [United]. In this regard, I waive my privacy rights. I make this assignment in consideration of [United's] agreement to perform services and supply materials and otherwise perform its obligations under this contract, including not requiring full payment at the time of service. I also herby [sic] direct my insurance carrier(s) to release any and all information requested by [United], its representative, and/or its Attorney for the direct purpose of obtaining actual benefits to be paid by my insurance carrier(s) for services rendered or to be rendered.

6

The contractor in *Sidiq* submitted an invoice directly to the homeowners' insurer for the emergency water mitigation services the contractor performed. *Id.* Thereafter, the homeowners filed a claim with their insurer "for the entirety of the water damage caused to their home." *Id.* The insurer denied the claim after concluding that the leak at issue was not a covered loss. *Id.* Seeking declaratory relief, the homeowners sued the insurer. *Id.* While the case was pending, the insurer paid the contractor a sum of money, and the contractor executed a release of all claims against the insurer. *Id.* The insurer then moved for summary judgment in the homeowners' lawsuit, claiming that the homeowners assigned *all* their policy rights and benefits to the contractor, and therefore, lacked standing to sue the insurer. *Id.* The trial court agreed with the insurer and granted summary judgment. *Id.* at 825.

The Fourth District Court of Appeal reversed. The court noted that "a true ambiguity does not exist merely because a document can possibly be interpreted in more than one manner." *Id.* at 827 (quoting *Detroit Diesel Corp.*

---

*Id.* (all brackets in original).

Thus, the only noteworthy difference between the assignment in *Sidiq* and the assignment here is the addition of the sentence, "By execting [sic] this document, I intend for all rights, benefits, and proceeds for services rendered by Mason Dixon Contracting, Inc. to be assigned solely and exclusively to Mason Dixon Contracting, Inc."

7

*v. Atl. Mut. Ins. Co.*, 18 So. 3d 618, 620 (Fla. 4th DCA 2009)). Instead, when "construing the language of a contract, courts are to be mindful that 'the goal is to arrive at a reasonable interpretation of the text of the *entire agreement* to accomplish its stated meaning and purpose.'" *Id.* (quoting *Murley v. Wiedamann*, 25 So. 3d 27, 29 (Fla. 2d DCA 2009)). Applying these principles to an assignment that essentially mirrors the assignment in this case, the court held that "it was the unambiguous intent of the parties to limit the scope of the assignment to the work performed, rather than all of the rights under the insurance contract." *Id.* at 827. As such, the homeowners in *Sidiq* retained standing to sue the insurer for claims that were beyond the scope of the work performed by the contractor.

*Brown* tells a similar story. There, as in *Sidiq*, a property insurer argued that homeowners lacked standing to sue the insurer for breach of contract because the homeowners had assigned their policy benefits to a third-party contractor. *Brown*, 322 So. 3d at 100. The trial court accepted this argument and granted summary judgment for the insurer. *Id.* at 99–100. Again, the Fourth District Court reversed, holding that the assignment of benefits "did not divest the insureds' standing where it applied to work that the contractor performed or would perform, and where the contractor had performed no work under the contract." *Id.* at 100.

8

These cases show that an assignment of benefits to a third-party contractor does not foreclose a homeowner's standing to sue his or her insurer when the assignment is limited to work the contractor performs, and the contractor performs either a specific category of work (*Sidiq*) or no work at all (*Brown*). *See also Nicon*, 249 So. 3d at 682–83 (holding that a homeowner who retained two contractors—one for water/debris removal and one for asbestos remediation—did not exclusively assign his policy rights to either contractor: "it is evident that Mr. Prager was assigning all his rights under the policy to payment for the services performed by B & M Clean—not all his rights to payment for the entire covered claim").

Here, the contract between Appellant and Mason Dixon authorized direct payment of benefits to Mason Dixon "for services rendered" by Mason Dixon. The contract stated that Appellant intended to assign her policy "rights, benefits, and proceeds" to Mason Dixon "for services rendered" by Mason Dixon. Furthermore, the contract specified that Appellant made the assignment "in consideration" for Mason Dixon's "agreement tp [sic] perform labor, services, supply materials, and perform its obligations under this contract, including not requiring full payment at the time of service." In sum, "it was the unambiguous intent of the parties to limit the scope of the

9

assignment to the work performed, rather than all of the rights under the insurance contract." *See Sidiq*, 276 So. 3d at 827.

It is undisputed that Mason Dixon has not undertaken any work at Appellant's property. Accordingly, the assignment of benefits from Appellant to Mason Dixon—which contours to work performed by Mason Dixon—does not divest Appellant of standing to sue Tower Hill for breach of contract. *See Brown*, 322 So. 3d at 100–02; *Sidiq*, 276 So. 3d at 824–27.

III.

The trial court entered summary judgment concluding that Appellant surrendered her standing to sue Tower Hill when she signed her contract with Mason Dixon. However, because that contract was tethered to work that Mason Dixon would perform—of which none has occurred—we hold that Appellant retains standing to seek the enforcement of her insurance policy. Therefore, we reverse the trial court's entry of summary judgment and remand the case for further proceedings consistent with this opinion.[4]

REVERSED and REMANDED with instructions.

MAKAR and BOATWRIGHT, JJ., concur.

---

[4] We also conditionally grant Appellant's motion for appellate attorney's fees. *See FCCI Com. Ins. Co. v. Pulte Home Corp.*, 266 So. 3d 278, 279 (Fla. 1st DCA 2019).