[Cite as *Concrete Recovery, L.L.C. v. Nestle Purina Petcare Co.*, 2026-Ohio-692.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

CONCRETE RECOVERY LLC,     :

    Appellant,     :

vs.     :

NESTLE PURINA PETCARE     :
COMPANY, et al.,

    :

    Appellees.     :

    :

CASE NO. CA2025-05-042

OPINION AND
JUDGMENT ENTRY
3/2/2026

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2025 CVH 00268

Sebaly Shillito + Dyer, and Toby K. Henderson and Kaitlyn C. Meeks, for appellant.

Stites & Harbison PLLC, and William G. Geisen and Cassandra L. Welch, for appellee
Nestle Purina Petcare Company.

UB Greensfelder LLP, and Jesse R. Lipcius and Kyle D. Greene, for appellee Lithko
Contracting, LLC

## **O P I N I O N**

**SIEBERT, J.**

{¶ 1} Concrete Recovery LLC appeals the trial court's dismissal of Concrete

Recovery's declaratory judgment, breach of contract, and promissory estoppel claims

against Nestle Purina Petcare Company ("Nestle").[1] The trial court determined that Concrete Recovery failed to state a claim for which it could recover against Nestle. Concrete Recovery argues the trial court erred because Nestle allegedly accepted Concrete Recovery's bid for concrete pouring work and, among other things, gave Concrete Recovery "formal notice to proceed" with that work. Assuming the allegations of its amended complaint (as well as attached exhibits) are true, we agree that Concrete Recovery set forth actionable claims against Nestle.

## Background

{¶ 2} In October 2024, Nestle issued a request for bids (entitled the "Scope of Work") for concrete work in connection with construction of Nestle's petfood factory in Batavia, Clermont County (the "Project"). Generally speaking, the 28-page Scope of Work described the services and labor needed as well as the responsibilities of any contractor whose bid Nestle accepted. Among other provisions, the Scope of Work stated:

### 1.3.1 CONTRACT DOCUMENTS

The Contract Documents, together with all documents incorporated by reference therein . . . including any drawings, specifications, 3D Model, Addenda, Document Releases, Document Supplement Information (DSI's), Request for lamination (RFI's), Submittals, or other General Documents that are issued by [Nestle], will be distributed via electronic distribution . . . Contractor shall be responsible to determine, extrapolate, and refer to all applicable drawing and specifications to determine the complete contract scope of work.

---

1. Concrete Recovery also asserted claims for tortious interference with a contract and business relationship against Lithko Contracting, LLC, alleging that Lithko ultimately performed the work Nestle initially awarded to Concrete Recovery. The fact that these claims against Lithko remains unresolved "is irrelevant" and does not bar the instant appeal for lack of a final and appealable order because "at this point [Concrete Recovery] cannot recover from [Lithko]." *Wisintainer v. Elcen Power Strut Co.*, 67 Ohio St.3d 352, 355 (1993). Stated differently, because the trial court found Concrete Recovery did not have a contract with Nestle and did not reasonably or foreseeably rely on any promises made by Nestle, Lithko cannot be found to have interfered with Concrete Recovery and Nestle's alleged contract or business relationship. We therefore conclude this appeal is properly before us.

(Emphasis deleted.). The Scope of Work further stated that the selected contractor would have to use Nestle's "project management and collaboration system . . . for all project documentation" and required "Contractor to regularly check and review updated documents as they are added." To facilitate this, the Scope of Work stated "[a]pplicable team members of the Contractor are required to complete a free, one-hour Contractor training certification course . . . within TWO (2) weeks following contract execution." (Emphasis deleted.). Finally, as relevant to this opinion, the Scope of Work noted that "[a]ny discrepancies between [the Scope of Work] and the Contract shall be brought to the attention of [Nestle] prior to signing the contract and [Nestle] shall provide guidance on the controlling terms."

{¶ 3} That same month, Concrete Recovery submitted an estimate to perform the Project for $471,277 (the "Bid"). The Bid provided that it may be accepted by telephone or email. The Bid further stated, "We do require half of the estimate prior to day or day of starting the job, the remaining balance is due upon completion of the job" and "We do offer a one year warranty on anything over a hairline fracture." Concrete Recovery alleged that "[o]n or about October 14, 2024 . . . [Nestle] informed Concrete Recovery of acceptance [of the Bid] by phone call." Nestle does not contest the phone call occurred on this date, but asserts it was "to inform Concrete Recovery it had been selected as the preferred bidder" for the Project.

{¶ 4} After this call, Concrete Recovery completed forms and paperwork required by Nestle and cooperated with being added to Nestle's vendor management system. Concrete Recovery workers also completed online orientation/safety training with Nestle and provided Nestle with a certificate of liability insurance as required by the Scope of Work. In late October, Nestle sent Concrete Recovery an "Amended Notice of Commencement" which included an exhibit listing "all contractors contracting directly with

[Nestle]." The list included "Concrete Restorations, 150E Forest Ave, South Lebanon, Ohio 45065." Although its name was not correct, the listed address was that of Concrete Recovery's office.

{¶ 5} On November 1, 2024, Nestle emailed a "Letter of Intent" to Concrete Recovery which stated Nestle's "intention to engage in a direct agreement with [Concrete Recovery] for work associated with the [the Project]." The letter further invited Concrete Recovery to advise Nestle "if there are other critical path items to be addressed while we finalize this agreement" and that Nestle "sincerely appreciate[s] the opportunity to work with you as we continue to develop our pending agreement." In another email sent later that day, Nestle stated, "work is slated to start on Monday [November 4, 2024]. We won't have the contract in hand by then. Attached is our formal notice to proceed. Please let me know if this will work for you guys to move forward with the work."

{¶ 6} However, on November 4, 2024, Nestle emailed Concrete Recovery advising that "[Nestle] will not be able to comply with the request for downpayment within the 14-day period . . . Given the current schedule demands and financial considerations, [Nestle] will not be proceeding with this contract at this time."

{¶ 7} Concrete Recovery subsequently filed suit. Concrete Recovery's amended complaint (the operative complaint on appeal) sought a declaratory judgment that the parties entered into a binding contract. Concrete Recovery also claimed Nestle breached the parties' contract. Finally, Concrete Recovery pled a claim for promissory estoppel, asserting that if no contract between the parties existed, Nestle's selection of the Bid and its later directive to "move forward with the work" were promises that reasonably and foreseeably induced Concrete Recovery to incur time and expense to get ready for the project.

{¶ 8} Nestle filed a motion to dismiss the amended complaint. The trial court

- 4 -

granted Nestle's motion, concluding that there was no valid and enforceable contract between Nestle and Concrete Recovery. The trial court found the "Scope of Work itself is not a contract and anticipates that important matters such as discrepancies must be addressed prior to the execution of a formal, written contract." The decision also rested on the Letter of Intent, its reference of Nestle's "intention to engage in a direct agreement" with Concrete Recovery, and its inquiry into whether Concrete Recovery "has other critical path items to be addressed while we finalize this agreement." (Emphasis deleted.).

{¶ 9}   The trial court concluded these documents "clearly indicate[d] that further action [was] required before a contract [could] be formalized" between Concrete Recovery and Nestle. As a result, the trial court concluded the parties had no contract (dismissing both the breach of contract and declaratory judgment claims). The trial court also concluded that "no clear and unambiguous promises were made upon which Concrete [Recovery] could have reasonably relied" and dismissed the promissory estoppel claim.

{¶ 10} Concrete Recovery now appeals that order.

**Motion to Dismiss and Standard of Review**

{¶ 11} A motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of the complaint. Civ.R. 12(B)(6); *Buckner v. Bank of New York*, 2014-Ohio-568, ¶ 13 (12th Dist.), citing *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, (1992). Such motion "only determines whether the pleader's allegations set forth an actionable claim." *Ward v. Graue*, 2012-Ohio-760, ¶ 9 (12th Dist.). In addition, "all [of] the factual allegations of the complaint must be taken as true and all reasonable inferences must be drawn in favor of the nonmoving party." *Byrd v. Faber*, 57 Ohio St.3d 56, 60, (1991).

{¶ 12} For a complaint to be dismissed for a failure to state a claim, it must appear

beyond a reasonable doubt from the complaint that the plaintiff can prove no set of facts entitling him or her to recovery. *LeRoy v. Allen, Yurasek & Merklin*, 2007-Ohio-3608, ¶ 14. "'[A]s long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.'" *Conaway v. Mt. Orab*, 2021-Ohio-4041, ¶ 13 (12th Dist.), quoting *York v. Ohio State Highway Patrol*, 60 Ohio St.3d 143, 145 (1991). Importantly, "[a] court may not use the motion to summarily review the merits of the cause of action." *Home Builders Assn. of Dayton & Miami Valley v. Lebanon*, 2004-Ohio-4526, ¶ 8 (12th Dist.).

{¶ 13} When considering whether to dismiss a complaint based on the import of written instruments attached to a complaint, courts "must avoid interpreting the [written instrument] at such an early stage unless the instrument is so clear and unambiguous on its face that the court can determine to a certainty that the plaintiff would be entitled to no relief under any provable set of facts." *Cash v. Seery*, 1998 WL 103006, *3 (12th Dist. Mar. 9, 1998), *Denlinger, Rosenthal & Greenberg, LPA v. Cohen*, 2012-Ohio-4774, ¶ 17 (12th Dist.).

{¶ 14} An appellate court reviews a trial court's decision to grant a motion to dismiss de novo. *Perrysburg Twp. v. Rossford*, 2004-Ohio-4362, ¶ 5.

**First Assignments of Error – Do the Circumstances Indicate the Parties May Have Formed a Contract?[2]**

{¶ 15} Concrete Recovery argues the trial court erred in concluding Concrete Recovery and Nestle did not have a contract. Concrete Recovery asserts a contract was formed when Nestle called on October 14, 2024, and advised it had accepted the Bid. In

---

2. "[W]e confront [this] fairly basic question that vexes first-year law students . . . [a]lthough these sophisticated parties certainly knew how to dress up a contract in more formal attire . . ." *N. Side Bank & Tr. Co. v. Trinity Aviation, LLC*, 2020-Ohio-1470, ¶ 1 (1st Dist.).

turn, Nestle argues the Scope of Work contemplated the necessity of a formal written agreement as a prerequisite to contract formation. Before addressing the parties' arguments, we will review some basic contract principles.

*Formation of a Contract, Generally*

{¶ 16} "There are three types of contracts under Ohio law: (1) express contracts; (2) implied in fact contracts; and (3) implied in law contracts." *Baise v. Puckett*, 2024-Ohio-508, ¶ 11 (12th Dist.). Express contracts are perhaps the most conventionally understood of these. Formation of an express contract, requires "an offer and acceptance of written terms" to show that two parties came to an agreement. *Id*. Existence of implied in fact and implied in law contracts, however, are inferred because no written contract exists. *Id*. at ¶ 12-13. This case involves whether an implied in fact contract exists. Formation of an implied in fact contract "is shown by the surrounding circumstances which made it inferable that the contract exists as a matter of tacit understanding." *Sterling Constr., Inc. v. Alkire*, 2014-Ohio-2897, ¶ 23 (12th Dist.).[3] Regardless of whether a contract is express or implied, its essential terms must be identifiable and include the parties to be bound, subject matter of contract, consideration to be exchanged, and price to be paid. *Holloway v Moritz*, 2019-Ohio-83, ¶ 17 (12th Dist.), *N. Side Bank & Tr. Co. v. Trinity Aviation, LLC*, 2020-Ohio-1470, ¶ 15 (1st Dist.).

*White Hat Mgt. LLC*

{¶ 17} The parties' arguments on appeal largely surround their contrasting applications of a case from one of our sister districts. *See generally, White Hat Mgt. L.L.C.*

---

3. Though not important for resolving this case, an implied in law contract can be formed even when "there is no meeting of the minds, but civil liability arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain and for which he may be made to respond to another in an action in the nature of assumpsit." *JS Productions, Inc. v. G129, L.L.C.*, 2011-Ohio-4715, ¶ 15 (12th Dist.).

*v. Ohio Farmers Ins. Co.*, 2006-Ohio-3280 (9th Dist.). In *White Hat*, the court recognized

the general rule that, an implied contract can be "formed when a party soliciting bids

accepts a proposed bid and gives the bidder notice of the acceptance." *White Hat* at ¶ 8,

citing *Commr. of Highland Cty. v. Rhoades* (1875), 26 Ohio St. 411, paragraph one of the

syllabus. In such cases, later execution of a formally written contract is done merely "to

evidence the contract terms to which the parties previously agreed." *Id. See also*

*Walbridge Indus. Process, LLC v. Vaughn Industries*, *LLC*, 472 F.Supp.3d 420, 426

(N.D.Ohio 2020), quoting *Id.*

{¶ 18} However, *White Hat* recognized that "an exception to [this] general rule . . .

exists when it is understood that the acceptance of the bid *and* execution of a formal

written contract are both conditions of the formation of a contract between the parties.

(Emphasis added.) *Id.* "This two-part acceptance process may be imposed *by the*

*information contained in the solicitation of bids* or by virtue of the fact that the party

seeking the bid is authorized by statute to contract only by a formal written contract."

(Emphasis added.) *Id.*, citing *Hughes v. Clyde* (1884), 41 Ohio St. 339, 340.[4]

*Analysis*

{¶ 19} Applying *White Hat* to this case, Concrete Recovery asserts a contract was

formed when (1) Nestle sent out its request for bids, (2) Concrete Recovery sent Nestle

the Bid, and (3) Nestle informed Concrete Recovery that it had accepted the Bid.

However, Nestle argues that no contract formed because Nestle's Scope of Work

---

4. The *White Hat* court also observed that in cases involving government contracts for public improvements, Ohio statute "imposes a written requirement" for contracts, but the court also noted that such requirement would not "prohibit White Hat [a community school manager for the government] from entering into an oral contract and subsequently memorializing that agreement in a written contract." *Id.* at ¶ 11. Concrete Recovery, Nestle, and the trial court all noted this distinction, but the parties agree it plays no part in deciding this appeal because no government/public improvement contract is involved. The question before us, therefore, is simply whether this case meets the exception noted in *White Hat* and Ohio caselaw.

contemplated the necessity of a formal written agreement as a prerequisite to contract formation. Nestle points primarily to (1) the Letter of Intent's acknowledgement that the parties "continue[d] to develop [their] pending agreement" and (2) the Scope of Work's requirement that discrepancies between it and the parties' contract "be brought to the attention of [Nestle] prior to signing" the written contract. Nestle also asserts the Scope of Work and the Bid cannot be used to form a contract because they are not consistent on or did not speak to various "key terms" or "essential construction contract terms" including "payment . . . warrant[ies], insurance requirements, and permitting and inspection costs" as well as "the time of performance, change orders and variations, consequences for non-performance or delayed performance . . . and termination rights."

{¶ 20} After construing the facts of this case in favor of Concrete Recovery, the non-moving party, multiple issues arise with Nestle's arguments. First, they essentially frame the Scope of Work as if it was an offer. However, it was not until concrete Recovery submitted the Bid were the essential terms of a potential contract identified, including the parties to be bound (Nestle and Concrete Recovery), subject matter of the contract (concrete pouring at a Nestle facility), consideration to be exchanged (money for performance of concrete pouring), and price to be paid ($471,277). If, as Concrete Recovery contends, Nestle called on October 14, 2024, to accept the Bid, the facts of this case, taken together and in a light most favorable to Concrete Recovery, make it inferable that the contract existed as a matter of tacit understanding at that point.

{¶ 21} The Scope of Work's requirement that discrepancies between the Scope of Work and the parties' written contract be identified before signing the contract could just as likely indicate Nestle's *contemplation* of the execution of a formal written agreement rather than *requiring* one. Moreover, assuming an enforceable contract existed after the October 14, 2024, phone call, any subsequently exchanged document, including the

Letter of Intent, is wholly superfluous as to the issue of contract formation. What Nestle contends are "key terms" of the parties' contract that were not yet settled, including the timing of payment, weather delays, warranties, insurance requirements, and miscellaneous costs, are relevant only to determine whether the parties' contract was *breached*. Indeed, Section 1.3.1 of the Scope of Work expressly contemplated that various documents, specifications sheets, and other "General Documents" would, taken together, constitute the "Contract Documents" for which the contractor Nestle selected would be responsible to review and "determine the complete contract scope of work." Ultimately, nothing in the record before us leads us to conclude that Nestle's purported acceptance of the bid depended on the parties' agreement to other "key" or "essential" terms" (as defined solely by Nestle) or by the execution of a single, written document.[5]

{¶ 22} The parties' behavior following the October 14, 2024, phone call, when viewed in a light most favorable to Concrete Recovery, also suggests that execution of a formal written agreement was not essential to contract formation. For example, Concrete Recovery workers completed Nestle's required onboarding processes for contractors, filled out necessary forms, and provided Nestle with a certificate of insurance as required by the Scope of Work. In addition, prior to sending the Letter of Intent, Nestle's "Amended Notice of Commencement" identified Concrete Recovery as one contractor "contracting directly with [Nestle]." Perhaps most importantly, though acknowledging the parties would not have a "contract in hand by" the time Concrete Recovery started work on the Project, Nestle sent Concrete Recovery a "formal notice to proceed" with the Project. This

---

5. We also note that the Scope of Work and Bid did in fact discuss some of the purportedly missing "key" or "essential" terms described by Nestle. For example, the Bid stated Concrete Recovery "offer[ed] a one year warranty on anything over a hairline [concrete] fracture." Moreover, the Scope of Work provided, among other things, that the work be completed on the "North Side of office building walks, stoops and curbs so occupancy can take place no later than December 1" and that Nestle could withhold payment if identified deficiencies were not timely corrected.

occurred three days before the Project was set to begin.

{¶ 23} While further discovery and litigation on this issue may demonstrate otherwise, the record before us leads us to conclude that Concrete Recovery's pleadings and attached documents show a set of facts which would allow Concrete Recovery to recover damages from Nestle.

{¶ 24} We sustain Concrete Recovery's first assignment of error.

**Second and Third Assignments of Error – Dismissal of Declaratory Judgment and Promissory Estoppel Claims**

{¶ 25} Concrete Recovery also asserts the trial court erred by dismissing the declaratory judgment and promissory estoppel claims against Nestle. We apply the same standard of review here and must determine whether Concrete Recovery's amended complaint, in a light most favorable to Concrete Recovery, sets forth actionable claims against Nestle. *Ward*, 2012-Ohio-760, at ¶ 9; *Byrd*, 57 Ohio St.3d at 60.

*Declaratory Judgment*

{¶ 26} Generally speaking, "a declaratory-judgment action may be filed only for the purpose of deciding an 'actual controversy, the resolution of which will confer certain rights or status upon the litigants.'" *Calvary Industries, Inc. v. Coral Chem. Co.*, 2019-Ohio-1288, ¶ 11 (12th Dist.), quoting *Mid-Am. Fire & Cas. Co. v. Heasley*, 2007-Ohio-1248, ¶ 9. This can include determination of parties' contractual rights and obligations. *Id* at ¶ 10.

{¶ 27} Our analysis within the first assignment of error makes it clear the trial court also erred in dismissing Concrete Recovery's declaratory judgment claim. Because we determined that Concrete Recovery's amended complaint sufficiently stated a claim for breach of contract, it must follow that Concrete Recovery's complaint showed an actual controversy that would be resolved by determining whether the parties formed a contract

and deciding the rights or status between them.

*Promissory Estoppel*

{¶ 28} Meanwhile "[p]romissory estoppel is an equitable doctrine for enforcing the right to rely on promises." *Smith-Knabb v. Vesper*, 2023-Ohio-259, ¶ 19 (12th Dist.). The elements of promissory estoppel are: "(1) a clear and unambiguous promise was made; (2) upon which it would be reasonable and foreseeable for the party to rely; (3) actual reliance on the promise; and (4) the party was injured as a result of the reliance." *RG Long & Assocs., Inc. v. Kiley*, 2015-Ohio-2467, ¶ 14 (12th Dist.).

{¶ 29} Here, Concrete Recovery alleged that Nestle accepted the Bid and later sent Concrete Recovery a "formal notice to proceed" just days before work was scheduled to begin. As a result of such express notice, Concrete Recovery alleged it foreseeably and reasonably relied on these notices by, among things, completing onboarding tasks for Nestle, gathering materials and laborers for the project, and forgoing other projects. On the record before us, we conclude that Concrete Recovery could have reasonably and foreseeably relied and acted on Nestle's "formal notice to proceed" despite not having any potentially contemplated, written contract in hand.

{¶ 30} We therefore sustain Concrete Recovery's second and third assignments of error.

{¶ 31} Judgment reversed and remanded for proceedings consistent with this opinion.

PIPER, P.J. and M. POWELL, J., concur.

- 12 -

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, reversed and remanded for proceedings consistent with the above Opinion.

It is further ordered that a mandate be sent to the Clermont County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robin N. Piper, Presiding Judge

/s/ Mike Powell, Judge

/s/ Melena S. Siebert, Judge